## HANNAN v. HANNAN.

Court of Appeals of Kentucky.

Jan. 23, 1953.

As Modified on Denial of Rehearing
April 24, 1953.

Eugene C. Royse, Maysville, for appellant.

D. Bernard Coughlin, Maysville, for appellee.

DUNCAN, Justice.

This is a divorce action wherein the appellant sought an absolute divorce and restoration of property, and the appellee, by her cross petition, sought the same relief. The Chancellor dismissed both the original and cross petition for lack of evidence. Originally, the ground alleged for divorce by both parties was cruel and inhuman treatment. After completion of the proof and more than a year after the original separation of the parties, appellant tendered a supplemental petition, charging abandonment for more than one year. The lower court refused to permit the filing of this pleading, but it is tendered and properly made a part of the record.

At the time of their marriage on June 17, 1937, appellant was forty-nine years of age, and the appellee thirty-seven. Each had been previously married, and it may be presumed they understood some of the vicissitudes as well as the beauties of married life. Appellant was employed in a retail food establishment, and appellee in a local bank and as a part time employee of the Collector of Internal Revenue.

By their first marriage, each had two sons. Appellant's older son was twenty-seven years of age and was established in his own home. The younger son was fifteen years of age, and lived with relatives. He never resided in the home of his father after the marriage and does not enter into the case except to the extent that the father paid $6 a week toward his support for the first year after the marriage. Apparently, this son then became self-supporting. Appellee's two sons were fourteen and fifteen years of age, respectively, and lived with the parties through their high school years and intermittently during their advanced

schooling and military service. In 1947, the younger son married and established his own home. The elder son, who never married, worked away from home but returned frequently for visits.

The only testimony introduced is from the parties. While not agreeing in all respects, it is not difficult to analyze the testimony of each and get a fairly clear picture of the parties and their difficulties. At the time of the marriage, appellee had $4,500 in government bonds, which subsequently matured in 1946, and about $1,500 in cash, together with some household goods from her previous marriage. Appellant had no property of consequence. Following the marriage, the parties continued their regular employment, the appellant earning about $35 per week and the appellee approximately $100 per month. There was some fluctuation in the earnings of each throughout the marriage, and we shall discuss their comparative incomes in more detail at a later point in the opinion.

The testimony of the parties indicates a contrast in personality. The appellee was more aggressive and business-minded, and throughout their married life, the appellant regularly brought home and delivered his weekly pay check to appellee, who placed it with her own earnings and after payment of current expenses deposited the balance in her individual bank account.

Their first project was a home. Typically, the appellee selected the site, secured the lot, taking title in her own name, chose the plans, engaged the contractor, and arranged the financing. The home was completed in March, 1938, at a cost of approximately $6,000. Upon completion of the home, $3,000 was borrowed from a local bank and placed in appellee's bank account. That loan was later refinanced with a building and loan association and repaid from earnings of appellant and appellee over the succeeding eight years.

In the fall of 1938, a grocery store was purchased and an additional $1,000 was borrowed on the home for that purpose. The store was operated by appellant for the ensuing three years until September, 1941, when it was traded for a farm, with the payment of an additional $750 and the assumption of a $2,500 mortgage. Consistently with previous transactions, title to the farm was likewise taken in appellee's name. Apparently, the store was not an outstanding success from a financial standpoint, as it was necessary to borrow $2,243.74 from the guardian account of appellee's two sons and put into the store. During its operation, the family lived out of the store, used the receipts to pay current store expenses and for the purchase of a truck and additional store fixtures. A few years later, the parties sold the farm for $8,500, represented by a cash payment of $2,500 and six notes in the principal amount of $1,000 each, payable to appellee. The $2,500 initial payment was used in repaying the sum borrowed from appellee's sons.

During the ensuing years, their married life was uneventful. The appellant worked regularly, turning over his pay check to the appellee to put into her individual account for family use and saving. The appellee also worked regularly and used her earnings likewise, but regular deductions were made from her salary to buy government bonds, which were put in her individual name.

Early in 1950, appellee accused appellant of being involved in what she describes as a scandalous affair. The nature of this affair is not disclosed, and it is not referred to further in the testimony. Appellee appeared highly incensed that appellant did not make some reply to her charges, and from that point forward, conditions went from bad to worse. On July 16, 1950, appellee ordered appellant to leave, stating that there were trains going both north and south and it was immaterial with her in which direction he went so long as he got out of what she described as "my home." Appellee admits this fact, expressing herself as follows:

"* * * I certainly did. I should have kicked him out."

No misconduct is shown against either party. The appellant appears to have been a model husband, necessarily frugal and economic in his habits. Other than completely dominating the home and the life of appellant, it cannot be said that appellee is

guilty of any misconduct, although her attitude toward appellant during the latter months of the marriage did not indicate that degree of affection which the conduct of appellant had merited.

█ Appellant insists that there is no hard and fast rule defining cruel and inhuman treatment as that term is used in the statute and that appellee's domineering conduct is sufficient to justify a divorce on that ground. Athough it is difficult to understand how a husband can become and remain so completely dominated as was the appellant in this case, we are not prepared to say that appellee's conduct amounted to cruel and inhuman treatment. Apparently, appellant is somewhat to blame for the situation because he meekly submitted to appellee's control and did not seem to be greatly disturbed about it. His trust in her was implicit, and but for being required to leave the home he would have been perfectly satisfied to have continued his former role.

█ We are of the opinion that the evidence justified a divorce to appellant on the ground of abandonment. Ordinarily, the matter of filing amended or supplemental pleadings is within the sound discretion of the court. This Court has properly protected the broad discretion of the lower courts in controlling pleadings, but we have not hesitated to overrule a lower court when its discretion has been abused. Petry v. Petry, 142 Ky. 564, 134 S.W. 922; Phillips v. Phillips, 173 Ky. 608, 191 S.W. 482; Combs v. Combs, 301 Ky. 463, 192 S.W.2d 395.

█ The act of one spouse in ordering the other to leave the family home is sufficient to constitute abandonment when the separation continues for the statutory period. In the case of Reynolds v. Reynolds, 224 Ky. 668, 6 S.W.2d 1078, 1079, it was said:

> "The defendant ordered his wife to leave, and she left in obedience to his request. This constitutes an abandonment of the wife by the husband within the meaning of our statute."

In this case, the separation occurred upon orders of the appellee and continued for more than the statutory period. We are aware of the rule in force in many States that in computing the period of abandonment the time during which an action for divorce is pending is not counted in the reckoning of the statutory period. We have no opinions on the subject in Kentucky, and the rule apparently is not recognized in all States. The rationale of the rule seems to be that when the grounds of divorce charged are of a nature which imply consent to the separation the other spouse is not guilty of abandonment during the period of litigation. Some States do not indulge the rule invariably, and the rule in those States is stated in 17 Am.Jur., p. 208, sec. 109, Divorce and Separation, as follows:

> "The time during which a prior proceeding for divorce or separation was pending is not, however, necessarily to be excluded in determining in a subsequent proceeding whether the desertion of the defending spouse has continued for the requisite period."

██ The supplemental petition may be regarded as a new action which speaks from the time it was offered. We do not think the filing of the suit by appellant after he was forced from the home implies a consent to a continuation of the separation. The court should have filed the supplemental petition and granted the divorce on the ground therein alleged.

█ Turning now to the accumulated earnings of the parties, it appears that during the marriage the earnings were substantially equal. Appellee files a statement of the respective earnings covering the years from 1937 to and including 1950, which she states was taken from income tax returns. This statement indicates that during the thirteen-year period appellant earned a total of $18,647.03, and appellee $22,439.43. We think the statement does not indicate the true picture so far as the earnings are concerned since it shows no income whatever to appellant during the three-year period while he was operating the grocery store. Neither does it show any income whatever to appellant from the operation of the farm during the period of its ownership. Making due allowance for

this and other omissions, we think it is not unfair to the parties to treat their income as being substantially equal during the years of their marriage.

Appellee either refused or failed to divulge the amount of bonds and other securities which she now holds or the amount of money which is presently deposited to her individual account. For this reason, it is impossible for this Court to make an accurate computation of the net worth of the parties at the time of the separation. We think a fair and equitable basis of settlement would be to require appellee to make a complete disclosure of all funds and securities now held by her. From the total, appellee will be paid a sum sufficient to represent her net worth at the time of the marriage and an equitable division of the remaining property will be made between the parties. The Court should order a restoration of property to appellant, following substantially the basis which we have indicated.

The judgment is reversed for proceedings consistent with this opinion.