SARAH RIDER, appellant, v. PAUL RIDER, appellee.

No. 50116

(Reported in 105 N.W.2d 508)

■■■

October 18, 1960.

Stipe, Davidson & Hemphill, of Clarinda, for appellant.

Camp & Harsh, of Creston, for appellee.

GARRETT, J.—The parties to this action were married in 1936 and resided on a farm until their separation on December 21, 1958. In 1944 appellee's father died leaving the farm occupied by these parties to his wife, for her natural life, and upon her death, to his four children, of whom appellee was one. The life tenant had the right to request sale of the land for her comforts and necessities except only the homestead forty acres thereof, which she quitclaimed to appellee. The farm involved consisted of 202 acres. No children were born to plaintiff and defendant.

The plaintiff sought and was granted a divorce on the ground of cruel and inhuman treatment and was awarded $1000 in full and final settlement of all property rights between the parties and $200 attorney fees. The plaintiff being dissatisfied with the award has appealed.

I.  The sole contention of appellant is that the allowance by the trial court of the sum of $1000 in full and final settlement of all property rights between the parties, and the further sum of $150 as temporary alimony, is an inequitable and inadequate allowance for her in the light of the property accumulated by the parties during their married life. Appellant seeks to have such property settlement allowance increased and additional attorney fees allowed for her attorneys on this appeal. In her petition she prayed that a decree be entered effecting a division of property held jointly by the plaintiff and defendant as of December 21, 1958, and allowing the plaintiff her just share therein.

The right to a property settlement and alimony in divorce actions is provided by section 598.14 of Code of Iowa, 1958, which, so far as material, is: "When a divorce is decreed, the court may make such order in relation to * * * property, parties, and the maintenance of the parties as shall be right."

"The obligation of the husband for the support of the wife affords the basis for the court's action, but this is not regarded as a debt, in the sense of a pecuniary obligation. It arises from a duty which the husband owes as well to the public as to the wife, though not resting on any specific contract." Shipley v. Shipley, 187 Iowa 1295, 1304, 175 N.W. 51, 55.

"As to property division and alimony decision, divorce cases are peculiarly dependent on the facts of each case. Specific rules are not too helpful because the facts vary from case to case. The elements to be considered are parties' age, health, present ability to earn, amount of resources owned by each or both parties, contributions of each to the joint accumulations, the duration of the marriage, indebtedness of each or both, conduct of the guilty party, and any other facts which assist the court to arrive at a just, fair and equitable decision. Retman v. Retman (Iowa, N. O. R.), 254 N.W. 804; Mitchell v. Mitchell,

193 Iowa 153, 185 N.W. 62; Brannen v. Brannen, 237 Iowa 188, 21 N.W.2d 459." Alberhasky v. Alberhasky, 250 Iowa 986, 1001, 97 N.W.2d 914, 924.

Also see Nelson v. Nelson, 246 Iowa 760, 68 N.W.2d 746; Black v. Black, 200 Iowa 1016, 205 N.W. 970.

Neither party challenges that part of the decree which grants plaintiff an absolute divorce.

II. There is no definite rule to aid the courts in determining the property rights of the parties in cases such as this. The statute grants the court authority to make such order in relation to the property and parties as shall be right, but the difficulty lies in determining what is right. We are abidingly satisfied that the allowance to plaintiff of $1000 in full settlement of her property rights is not right or equitable.

Plaintiff testified that the separation of the parties occurred on December 21, 1958, after the defendant beat her and stripped her clothes from her in a lane running from their farm to the town of Nodaway; that she secured a coat from the neighbors to cover herself, and with an officer returned to her home and secured one outfit of clothing, then went to reside with her father who was drawing $35 per month social security. The cause of this episode seems to have been her attempt to go to church without her husband's consent. Plaintiff thereafter secured employment at a nursing home which paid her $24 per week. She had no other income and no property except her interest in the property accumulated during their married life. Her health was only fair, she having had within the past five years a gall bladder operation and a hysterectomy, and having been in the hospital several times "in between". The evidence disclosed that particularly after defendant had disc fusion surgery in 1956, plaintiff did all kinds of field work, operating a tractor with various kinds of machinery and working on the hay baler. The defendant, for health reasons, was unable to do heavy farm work but could do certain chores and care for the livestock.

On one occasion when the parties were quarreling, plaintiff's son by another marriage gave defendant a severe beating and attempted unsuccessfully to have him adjudged insane.

Plaintiff claimed the provocation was that defendant threatened her life with a gun, but this threat was denied by defendant. The parties were separated six or seven times during their married life. Obviously both parties were at fault, with the blame preponderating on the side of the defendant. Being the party principally responsible for the failure of the marriage, defendant should not be heard to complain when required to give plaintiff her rightful share of their property.

III. Defendant owned a one-fourth interest in 202 acres of farm land subject to a life estate held by his mother in all except the homestead forty acres in which she conveyed her life estate to him. The ages of the parties and the life tenant do not appear in the record. The value of the one-fourth interest in the land was fixed by several witnesses at around $8600. No estimate of the present value of defendant's remainder interest was given.

Gilbert Rider, as a witness for his brother, the defendant, placed valuations upon certain property of the parties as one-fourth interest in land $8000 subject to his mother's life estate in all but the homestead forty; half interest in steers $1206; machinery $4000 to $4500; household goods $500; pigs $360.

Defendant admitted he sold his interest in cattle for $3655.57 and hogs for $961.05 in addition to the steers his brother sold. The record discloses additional property belonging to the parties including a new truck worth about $2000, purchased in December 1958, a 1954 pick-up truck worth $500, a 1950 Chevrolet car which sold for $100 and a house in Nodaway, Iowa, of the value of $1500, which rented for $30 per month. Plaintiff testified that at the time of the separation they had 1500 bushels of milo, 200 bushels of wheat, and some baled hay. This claim was not controverted but it is reasonable to assume that the life tenant took half of the crops or that they were fed to her share of the livestock. Plaintiff claimed they paid no cash rent but put improvements on the farm, particularly after a cyclone in 1951 "took everything except the house and garage and a couple of boxcars." The farm was in the soil bank in 1957 and 1958.

The defendant listed debts including a claim in favor of

his mother for $8470.83. She did not testify and we are not disposed to accept this indefinite claim at its full face value. Defendant testified he had borrowed $19,400 from the bank in Villisca since January 1, 1955, making a total borrowing of around $30,000 in the past four years. In December 1958 the parties borrowed $3600 from the Nodaway Valley Bank in Villisca, Iowa, giving as security 23 head of Shorthorn cows, 18 calves, 18 steers and 6 heifers, warranting their title. Later defendant claimed his mother owned half thereof, but she listed no livestock for taxation purposes. He gave his brother what he later admitted were a fraudulent chattel mortgage and bill of sale to defeat his wife's claims.

"To enable the court to make an equitable distribution of the property of the parties, both parties must fully disclose their conditions as to property." 27B C. J. S., Divorce, section 291(1), page 264, and cases cited. In the consummation of division of property the parties are required to exercise utmost good faith and to make full disclosure of all material facts, including their circumstances and any other facts which might affect division. United States National Bank of Denver v. Bartges, 122 Colo. 546, 224 P.2d 658; Rentel v. Rentel, 39 Wash.2d 729, 238 P.2d 389; Hannan v. Hannan, Ky., 256 S.W.2d 485. A more complete and candid disclosure would have been helpful in this case.

Without determining the exact net value of the property involved and subject to division we are convinced the amount awarded by the district court should be substantially increased and we therefore hold that the decree should be modified to give plaintiff $5000 in full settlement of her property rights as between the parties and to allow her attorneys $300 in addition to the $300 heretofore allowed, in full for their services —Modified, affirmed and remanded.

LARSON, C. J., and HAYS, GARFIELD, PETERSON, BLISS, THORNTON, and OLIVER, JJ., concur.