RAY P. COOPER, cross-appellant, v. Jo COOPER, appellant.

MARY JO COOPER, appellant, v. RAY COOPER, cross-appellant.

No. 52191.

278

July 14, 1966.

Willie & Willie, of Eagle Grove, for appellant.

Karr & Karr, of Webster City, for cross-appellant.

Moore, J.—This is a divorce action filed September 21, 1964, by Ray Cooper against his wife Mary Jo Cooper alleging cruel and inhuman treatment and later amended charging adultery as grounds for divorce. He asked for custody of their four minor children, the personal property and that the 160-acre farm of the parties described in the petition and commonly referred to as the Goldfield farm be placed in trust with a life estate in him and the remainder in the children. After an unsuccessful attempt to obtain a divorce in Reno, Nevada, defendant Mary Jo filed her answer March 4, 1965, asking custody of the children and a determination of property rights.

On December 9, 1964, Mrs. Cooper commenced a partition action in the same court asking the 160-acre farm owned by Ray and herself be sold. On Mr. Cooper's motion this action was consolidated with the divorce case.

I. On trial to the court starting May 4, 1965, the entire controversy was tried as a contested divorce and resulted in a decree of divorce. The parties agreed the court could dispose of the property if a divorce was granted. The partition action thereby became moot as the divorce decree includes a determi-

nation of the parties' rights in the 160-acre farm and orders its sale. On this appeal by both parties we are asked to review the trial court's order determining their respective rights in the farm. Mary Jo's complaint her husband was in default due to late filing of his answer in the partition action therefore need not be considered by us. Our reference to the parties will be as they are in the divorce case.

Plaintiff and defendant were married December 29, 1956, at Eagle Grove. Plaintiff had served in Korea with distinction and received several citations including the Purple Heart. At all times pertinent here he was employed by the Chicago and Northwestern Railway Company first as a brakeman and later as engineer. Defendant had two years of college and was not employed outside the home during the marriage. At time of trial plaintiff was 37 and defendant 27. Four children were born to this marriage who ranged in age from three to seven years at time of trial.

During the first years marital problems, if any, were minor. They first lived in Hawarden, then on an acreage near Eagle Grove and in 1962 moved to the 160-acre farm near Goldfield. Defendant developed some emotional problems during the last few years of their marriage but real trouble resulted from defendant's adulterous conduct with a farmer and horseman at Fairfield starting early in 1964. Her letters establish illicit relations with this man and their plans to obtain divorces and marry.

July 9, 1964, Mrs. Cooper commenced an action for divorce in Wright County District Court. Mr. Cooper answered and indicated the divorce would be contested. Faced with frustration of her plans Mrs. Cooper without notice to her husband on August 17, 1964, dismissed her divorce action, drew out all the savings and $400 from the checking account of the parties, took the children and flew to Reno, Nevada. She filed a divorce action in Reno on September 28, 1964. This was one week after Mr. Cooper filed the divorce action in Wright County which is now before us on appeal. Not until after defendant's departure for Reno did plaintiff discover the torrid love letters that had passed between defendant and the man at Fairfield.

Plaintiff incurred attorney fees both for himself and his wife and other expenses in contesting defendant's attempts to obtain a Reno divorce. Her first divorce action in Reno was dismissed by the court on February 2, 1965, for lack of jurisdiction but she immediately started a second. At considerable expense plaintiff went to Reno in an attempt to get the children where he found them living with their mother under deplorable conditions. He also discovered she had been carrying on affairs with other men in Reno. She had taken a trip to Squaw Valley with a photographer and another to California with a Doctor Dunn.

On trial of this case defendant did not deny the letters written by her admitting adultery but refused to answer questions pertaining thereto and her conduct with other men during her marriage. Her attempt to prove misconduct by plaintiff failed for lack of evidence.

The trial court's findings, conclusions and decree filed May 17, 1965, grants plaintiff a divorce on the ground defendant Mary Jo Cooper had committed adultery. Custody of the four children is placed in the Wright County District Court with their physical custody given to plaintiff subject to review later upon proper showing. Defendant is granted reasonable visitation rights.

Regarding property rights the decree provides:

"4. Dr. O. N. Emerson of Eagle Grove, Iowa, is appointed a commissioner of this court with authority to sell at public auction in the courtroom of the courthouse at Clarion, Wright County, Iowa, the following described real estate, to-wit:

"The Southwest Quarter (SW ¼) of Section twenty six (26) Township 92 North, Range 26 west of the 5th PM, Iowa.

"From the proceeds of sale, there shall first be deducted the costs and expenses, court costs in case number 16173 and 16214, mortgage indebtedness, unpaid attorney fees incurred on behalf of both plaintiff and defendant, the unpaid indebtedness owing by each party as shown by the evidence as of the date of this decree. (In the event of any dispute on these claims they are to be submitted to the court) Any indebtedness incurred by reason of the farm operation is also to be paid. Of the

balance of the proceeds remaining ⅔rds thereof shall be allocated to Mary Jo Cooper and ⅓rd thereof to Ray Cooper. The commissioner is instructed to retain an amount equal to 35% of each share and to invest the same in certificates of deposit or savings accounts in the names of the children with a government insured bank or savings and loan association. The instruments representing such investments shall carry an interest rate of not less than 4% per annum and the same shall be left for safekeeping with the clerk of this court, her successor or successors. No bond shall be required. These investments shall remain intact until all of the children reach the age of 21 years, or sooner die or are emancipated. Jurisdiction is retained here to modify this provision in the event of death or disability of the parents or should other equitable circumstances arise.

"5. Defendant Mary Jo Cooper is granted absolutely:

"(a) Her furniture, bedroom suite, her car now in her possession, sewing machine, antiques, her dishes and enough bedding for her own use, to be removed by her from the present home by June 15, 1965.

"(b) her personal effects.

"6. Plaintiff is granted absolutely:

"(a) The Buick automobile and all other furniture and personal property located in the home not specifically granted to defendant in (a) of paragraph 5 above.

"(b) his personal effects.

"7. Any anticipated income or other property not accounted for herein above shall be divided ⅔rds to Mary Jo Cooper and ⅓rd to Ray Cooper."

Immediately after the decree, defendant gave notice of appeal and returned to Reno. Later she took possession of the personal property granted her under paragraph 5. The children are with their father. On March 26, 1966, Mary Jo married Jack Huddleston in Reno, Nevada. Mr. Huddleston was not mentioned in the record prior to his marriage to defendant.

With such acquiescences it is readily understandable her only complaint now is the trial court did not make an equitable division of the real property under paragraph 4. She argues plaintiff has only a small interest in the farm which she pro-

poses to pay off by increasing the mortgage if the farm is given to her.

On his cross-appeal plaintiff contends the trial court based the property division solely on the contribution made by the defendant when the farm was purchased, ignored his contributions made to the family finances and failed to consider the established fact defendant was the guilty party. He asserts defendant should not be given any interest in the farm and that it should be kept as a home for the children.

II. The misconduct of the guilty party which brings about a divorce is material in considering what is equitable in the way of division of property. Murray v. Murray, 244 Iowa 548, 554, 57 N.W.2d 234, 238; Farrand v. Farrand, 246 Iowa 488, 492, 67 N.W.2d 20, 22; Pfab v. Pfab, 257 Iowa 303, 306, 132 N.W.2d 483, 484. But as we say in Blaney v. Blaney, 256 Iowa 1151, 1153, 130 N.W.2d 732, 733, other matters must also be considered.

We have frequently stated equitable property division and allowance of child support in divorce cases are peculiarly dependent on the facts of each case. Among the matters to be considered are parties' age, health, present capacity to earn, amount of resources owned by each or both parties, contributions of each to the joint accumulations, the children involved, the duration of the marriage, indebtedness of each or both, conduct of the guilty party, and other facts which assist the court in reaching a just and equitable decision. Nelson v. Nelson, 246 Iowa 760, 768, 68 N.W.2d 746, 751; Alberhasky v. Alberhasky, 250 Iowa 986, 1001, 97 N.W.2d 914, 924; Rider v. Rider, 251 Iowa 1388, 1390, 105 N.W.2d 508, 510; Weiland v. Weiland, 255 Iowa 477, 480, 122 N.W.2d 837, 839, 1 A. L. R.3d 377; Pfab v. Pfab, 257 Iowa 303, 305, 132 N.W.2d 483, 484.

These precedents do not add greatly to this language of section 598.14, Code of 1962: "* * * the court may make such order in relation to the children, property, parties, and the maintenance of the parties as shall be right."

III. The difficulty here as in all such cases lies not in the applicable legal principles but in determining what is right under the facts presented. We therefore return to the facts as

we determine them from the voluminous record.

When the parties moved to Eagle Grove they bought an acreage for $7000. Mrs. Cooper supplied the down payment of $500. Title was placed in joint tenancy. Mr. Cooper made substantial improvements on the house including a new furnace costing $800 and a new basement. These improvements, the monthly payments, taxes and insurance were paid from his wages. The acreage was later sold at a profit in excess of $2000.

Prior to 1961 Mrs. Cooper inherited from her father and grandfather a $7/36$ interest in the 160-acre Goldfield farm. She also inherited some interest in a 320-acre farm near Eagle Grove. Other relatives of Mrs. Cooper owned the remaining interest in the Goldfield farm.

Early in 1961 the Goldfield farm was listed for sale at $56,000 being $350 per acre but no buyer was found. Mrs. Cooper then decided it should be bought as a family home. On August 30, 1961, plaintiff and defendant entered into a land contract with the other owners and agreed to pay them $45,111.12 for their interest in the Goldfield farm. To pay this amount Coopers obtained a mortgage of $33,600 from Prudential Insurance Company, assigned the proceeds from crops which they obtained as part of the purchase contract, borrowed $926.86 from a bank, gave Mr. Cooper's check for $258.27 and exchanged Mrs. Cooper's interest in the other farm. In their written arguments both parties estimate Mrs. Cooper's total contribution to the purchase of the farm was approximately $17,000. They took title as joint tenants with right of survivorship.

The farmhouse was extensively remodeled by the parties before they moved into it in the summer of 1962. These improvements included a new kitchen, roof, cupboards, bathrooms, ceilings, water softener, washer and dryer, an additional room and a sewer system. These house improvements totaled approximately $5000. It was partly financed by a $1500 home improvement loan. Some of the work was done by the parties.

In addition to the house improvements two corncribs were built, a cattle shed roof replaced and new fence installed. Much of the work was done by plaintiff. He also cut down trees, repaired fences and generally improved the farm. At time of trial

it was estimated the value of the farm had increased to at least $400 per acre.

Most of the money spent to improve the farm came from plaintiff's wages which averaged about $8000 per year. In June 1962 plaintiff received $2000 for a disability suffered on the railroad. This like the profit from the sale of the Eagle Grove acreage and plaintiff's wages went into the joint banking account of the parties and was used to pay family expenses and farm improvements.

Upon the whole record we feel the trial court's order as set out in paragraph 4 of the decree is equitable and right. It is our conclusion the decree should not be changed.

Costs of this appeal including the cost of the court reporter's transcript and printing the brief and arguments are taxed against defendant. Attorney fees for this appeal are to be paid by the parties to their respective attorneys.

Affirmed and remanded for such further action by the trial court as may be required to carry out the provisions of the decree and this opinion.

All JUSTICES concur.