**Edna M. SCHANTZ, Appellee,**

v.

**Elmer M. SCHANTZ, Appellant.**

**No. 52961.**

Supreme Court of Iowa.

Dec. 10, 1968.

Louis J. Kehoe and Livingston, Day, Meeker & Bates, Washington, for appellant.

Morrison, Morrison & Morrison, Washington, for appellee.

RAWLINGS, Justice.

Plaintiff-wife sought a divorce, and attendant redress, claiming cruel and inhuman treatment. Defendant-husband answered and counterclaimed for divorce, with other relief, asserting desertion. Following trial, plaintiff was granted a divorce with accompanying allowances, defendant's counterclaim dismissed and he appeals. We affirm.

These parties were married August 29, 1936, separated December 30, 1964, and never again cohabited.

Plaintiff's action was started September 13, 1966, and trial commenced September 11, 1967. Plaintiff was then 46, defendant 55.

At time of marriage neither party had any property except an automobile owned by defendant on which monthly payments of $20 were being made, and a questionable $5000 obligation owing him by his parents.

Five children were born to plaintiff and defendant, all of whom at time of trial had attained majority and were married, except Dorothy, 30, living at home with father.

When married, defendant was employed on a turkey farm, his pay being $50 per month. About November 1937, this couple began tenant farming, and in 1945 moved on to what is referred to as the 211 acre Caldwell farm.

After the marriage plaintiff, a hardworking housekeeper, cook and seamstress, raised large gardens, canned quantities of fruit and vegetables, made many of the clothes for herself and children and kept the farming records. She also, arguendo, was practically forced by defendant to assist with the farm work and other manual field labor.

Without question defendant is an industrious and financially successful farmer.

The early part of 1950 he purchased the Caldwell property for $28,485. Plaintiff's name, as one of the grantees, was removed by erasure from the face of the deed, as originally prepared, under peculiar circumstances. About February 1957, defendant also acquired the adjoining 78 acre Allensworth farm for $12,000.

Until plaintiff left, she and defendant, with their children, lived on the Caldwell place. A son, Wayne, and his wife live on the Allensworth tract. The two farms are operated as a unit.

A daughter, Dorothy, quit school on completing the eighth grade. As aforesaid, she has since lived with and helped defendant operate the farm.

Plaintiff's testimony is to the effect defendant was at all times, and ever increasingly, mean, dictatorial, critical, demanding, domineering, unsympathetic and miserly; regularly consumed intoxicating liquors to an excess, usually starting each morning, sometimes continuing throughout the day; once when drunk he fell in the yard and had to be carried into the house; repeatedly cursed plaintiff and called her vile, obscene and indecent names, often in the children's presence; frequently accused her of associating with other men; and said she was lazy, even during periods of illness due to pregnancy, thus physically unable to perform the manual labor demanded by defendant.

Once in 1963, plaintiff relayed to defendant a report to the effect he had committed immoral acts with one or more of their daughters. Defendant at the time denied such conduct, stating if it did happen he must have been drunk.

While living with defendant plaintiff experienced symptoms of a heart ailment, her teeth were in bad condition and she needed glasses, but defendant refused to allow her to see anyone about these problems.

Plaintiff's testimony also discloses defendant's conduct caused her to become nervous and upset, and "she couldn't take it any more." December 30, 1964, when defendant was so advised, he told plaintiff to go ahead and leave, which she did, taking with her $200 from a coffee can in the basement. Defendant says she took $2000.

After departure from the farm plaintiff secured sporadic light employment, being physically unable to do heavy work, and at time of trial was not remuneratively engaged.

About April 11, 1965, plaintiff, with the youngest son, Glen, returned to the farm home to get some personal items. Defendant, with Wayne and Dorothy, came out of the house and when advised as to the purpose of the visit, defendant pushed plaintiff off the sidewalk. When she and Glen were about to leave, without having obtained the personal effects, plaintiff asked defendant if he had "warmed", meaning maybe they could talk over and "straighten out" their marital difficulties. Thereupon defendant, in vulgar terminology, characterized plaintiff as a lewd person, and again accused her of "running around with other men". Defendant then told plaintiff to "go off and stay off". She and Glen complied.

The aforesaid testimony by plaintiff is amply supported, in material part by two of her sisters, a daughter Marjorie and son Glen.

Among other things, Marjorie stated defendant-father had "acted immorally" with her when she was 13, and several times she observed such conduct on his part with her sisters.

Dr. McCreedy was consulted by plaintiff after she left defendant. He prescribed medication for high blood pressure and a heart ailment, then referred her to Dr. Schrock, who directed use of a medicant for her nerves.

These two doctors, testifying for plaintiff, attributed her high blood pressure and nervousness to troubles in the home, com-

plaints about her husband, family life, and pending dissolution of the marriage. Dr. McCreedy advised plaintiff against any attempt to perform manual or heavy labor.

By use of earnings, received after leaving the farm, together with the $30 received each week from defendant, plaintiff had her teeth fixed and purchased glasses. Since separation from defendant she has felt better.

Although defendant denied most of plaintiff's testimony he admitted she was a good housekeeper, excellent cook, cared well for the house and children, and always helped with the farm work, but did so of her own accord, seldom in the fields.

He classified their domestic problems as occasional quarrelling and unpleasant.

With regard to the matter of drinking habits, defendant stated limited quantities of liquor or beer were consumed by him for medicinal purposes, and attributed his fall in the yard to exhaustion resulting from heat and overwork.

Defendant says he encouraged plaintiff to see a doctor, a dentist and to have her eyes examined.

However, he neither denied nor offered explanation as to the matter of any immoral conduct with his daughter Marjorie or her sisters.

The foregoing testimony by defendant finds support in that given by the daughter Dorothy and son Wayne, both of whom stated, in substance, defendant had at all times been an industrious, temperate and considerate husband and father.

As an allocation of property rights trial court granted plaintiff judgment against defendant for $50,000, awarded her $150 a month alimony, right to any money in her possession, her personal effects, and attorneys' fees in the total sum of $2000. Defendant was vested with full title in the property, real or personal, held and possessed by him.

On appeal defendant assigns as propositions in support of reversal, trial court erred in, (1) granting a divorce to plaintiff; (2) finding defendant guilty of immoral conduct with one or more of his daughters; (3) finding plaintiff had at all times assisted in accumulating the property; (4) determining the farm land to be worth $80,000; (5) awarding excessive monetary relief to plaintiff; (6) finding that plaintiff on leaving the farm took only $200; (7) dismissing defendant's cross-petition.

I. Recently the case of Beno v. Beno, 260 Iowa 442, 149 N.W.2d 778, was before this court and we there said, loc. cit., 149 N.W. 2d 780: "In recent months we have written several opinions discussing in rather lengthy detail much of the law applicable to the type of case now before us. They include Britven v. Britven, 259 Iowa 650, 145 N.W.2d 450; Lehmkuhl v. Lehmkuhl, 259 Iowa 686, 145 N.W.2d 456; Elliott v. Elliott, 259 Iowa 1286, 147 N.W.2d 907; Fritz v. Fritz, 260 Iowa 409, 148 N.W.2d 392; Burlingame v. Burlingame, 260 Iowa 18, 148 N.W.2d 493. From them and the cited authorities we find these general rules of law are well established.

"A party seeking divorce on ground of cruel and inhuman treatment endangering life has the burden of proof.

"To entitle a party to a divorce under Code section 598.8(5), it is necessary two elements be proven, (1) inhuman treatment and (2) danger to life therefrom.

"Life may be endangered by impairment of health.

"Danger to life is sufficient where the danger is reasonably apprehended.

"Proof of physical violence is not always necessary. Any mistreatment which deprives a spouse of needed rest, peace of mind, and affects the nervous system so that health is undermined, may endanger life as effectively as physical violence.

"A long continued, regular and persistent course of fault-finding, criticism and belittling, on the part of one spouse, may amount to cruel and inhuman treatment and

where there is also a persuasive showing that such conduct has affected the health, physical or mental, and to some extent has thereby endangered the life of the spouse, a sufficient cause has been made to justify a divorce.

"To determine whether ground for divorce under the allegation of cruel and inhuman treatment exists, it is necessary to consider the entire record of the married life of the parties.

"Our review is de novo. We give considerable weight to the fact findings of the trial court but are not bound by them.

"Whether a course of conduct is such as will justify a decree of divorce on ground of cruel and inhuman treatment must be determined in each case upon its facts."

See also Wignall v. Wignall, Iowa, 161 N.W.2d 791, 795–796, and Gerk v. Gerk, Iowa, 158 N.W.2d 656, 660.

As stated in Hand v. Hand, 257 Iowa 643, 645, 133 N.W.2d 63, 65: " * * * a continued course of wearing conduct, regularly, almost daily, indulged in, may constitute a strain on the nerves and sensibilities which in time may add up to serious damage to health. The constant dripping of the water of criticism, unjust accusations, belittling remarks, and constant evidence of an antagonistic disposition will in the course of time wear away the rock of health and so endanger life."

II. Of course, plaintiff's testimony relative to cruel and inhuman treatment by defendant must be corroborated. But it need not be substantiated in every detail, or the corroboration alone sustain the decree. Moreover, it may be supplied by direct or circumstantial evidence, testimony of the other spouse, his or her elusiveness, or failure to deny that presented by plaintiff. See Wignall v. Wignall; Beno v. Beno; and Britven v. Britven, all supra.

In the instant case plaintiff's testimony is amply corroborated by other witnesses, defendant's evasiveness, and failure to deny or even attempt an explanation with reference to the matter of immoral conduct with one or more of his daughters.

Trial court found defendant had been guilty of such cruelty as to endanger plaintiff's life, and a review of the entire record leads us to hold likewise.

See in support of this conclusion, Erickson v. Erickson, Iowa, 154 N.W.2d 106, 109–110; Sigler v. Sigler, 260 Iowa 748, 150 N.W.2d 287, 289; Beno v. Beno, supra; Burlingame v. Burlingame, 260 Iowa 18, 148 N.W.2d 493, 494; and Arnold v. Arnold, 257 Iowa 429, 434, 133 N.W.2d 53.

III. However, defendant argues any misconduct on his part, during marriage of these parties, was condoned by continued and prolonged cohabitation.

Condonation is defined as forgiveness, express or implied, by one spouse of another for breach of marital duty, with an implied condition the offense will not be repeated. Zuerrer v. Zuerrer, 238 Iowa 402, 407–408, 27 N.W.2d 260; 27A C.J.S. Divorce § 59, pages 193, 194–195; 24 Am. Jur.2d, Divorce and Separation, section 203, page 359; Nelson on Divorce and Annulment, Second Ed., section 11.01.

As a general rule courts are slow to apply the doctrine where there has been continued cruelty.

Reluctance to seek a divorce because of continued cruelty should ordinarily be commended not condemned or penalized. Hancock v. Hancock, 257 Iowa 119, 122, 131 N.W.2d 757; Lane v. Lane, 253 Iowa 92, 96, 111 N.W.2d 286; Payton v. Payton, 252 Iowa 772, 779, 108 N.W.2d 358, 86 A.L.R.2d 416; Bouska v. Bouska, 249 Iowa 281, 285–286, 86 N.W.2d 884; and Duwe v. Duwe, 246 Iowa 1336, 1344–1345, 72 N.W. 2d 501.

And, continued cohabitation is not necessarily a condonation of cruelty. Lane v. Lane, Payton v. Payton, Duwe v. Duwe,

all supra; 27A C.J.S. Divorce § 61, page 204; and 24 Am.Jur.2d, Divorce and Separation, section 216, page 371.

■ Finally on this issue, condonation is an affirmative defense which must be accordingly pled. Hancock v. Hancock, supra.

■ In the case at bar defendant neither asserted by any pleading, nor do we find in the record any basis upon which to hold the doctrine should be here applied.

IV. The remaining propositions urged by defendant in support of a reversal deal for the most part with defendant's net worth, allocation of property rights, and alimony awarded.

Any attempt to summarize the extensive and involved testimony relative to defendant's holdings would only serve to unnecessarily extend this opinion.

With regard to the foregoing, defendant's challenge appears to center largely upon trial court's determination of the value of land acquired during the marriage of plaintiff and defendant, and rights asserted during trial by Dorothy and Wayne.

Each party called two or more witnesses, all of whom testified as to value of the farmland.

Their competency is not here questioned so we need engage in no consideration of that subject. See however, Dougherty v. Boyken, Iowa, 155 N.W.2d 488, 491; Iowa Development Co. v. Iowa State Highway Commission, 255 Iowa 292, 297, 122 N.W.2d 323, and Comstock v. Iowa State Highway Commission, 254 Iowa 1301, 1307, 121 N.W.2d 205.

■ Without question the trier of the facts is at liberty to accept or reject any or all such opinion evidence. Lessenhop v. Norton, Iowa, 153 N.W.2d 107, 114, and Jones v. Sears, 258 Iowa 906, 911, 140 N.W. 2d 854.

Plaintiff's valuation witnesses testified the land was worth from $115,000 to $130,000; those testifying for defendant placed the value at from $53,100 to $63,686. Trial court determined a valuation of $80,000 was reasonable and fair.

■ An examination of the record fails to disclose any reason for us to disagree with that finding.

V. Trial court also found certain bank deposits, held in Dorothy's name, resulted from checks by defendant to her, all given after plaintiff's departure from the home, in fact subsequent to commencement of the divorce action with which we are here concerned.

During trial, Dorothy claimed ownership in certain machinery and livestock located on the farms, having a total value of approximately $5510, and Wayne asserted like right, present and future, in the same type of personalty valued at about $13,494.

■ But as the court noted, neither Dorothy nor Wayne are parties to this case and resultantly their rights were not subject to adjudication in this proceeding. In that regard see Davis v. Davis, Iowa, 156 N.W.2d 870, 872.

Furthermore, if any partnership or profit sharing agreements were entered into between Dorothy or Wayne with their father, to which plaintiff was not a party, it is for defendant to determine whether he intends or desires to carry out any such compacts. See Alberhasky v. Alberhasky, 250 Iowa 986, 1000, 97 N.W.2d 914.

Additionally, it appears that while defendant was dispossessing himself of substantial bank deposits he borrowed about $35,000, indicating, if nothing more, an attempt to distort his financial condition.

Defendant's tax returns reveal his net income for 1965 was $7287 after deducting $3000 paid to Dorothy, with a like sum to Wayne, and for 1966 it was $14,502.83, deducting a payment of $4000 to Dorothy and $2700 to Wayne. Incidentally, these same returns disclose defendant listed as his property all machinery,

equipment, livestock and grains held or located on the farms.

▋ Under existing circumstances, to the extent reasonably determinable by the record, we are persuaded defendant's net worth, at time of trial, was at least $112,000, and probably much more.

VI. Regarding distribution of property rights, and alimony, Code section 598.14 provides: "When a divorce is decreed, the court may make such order in relation to * * * property, parties, and the maintenance of the parties as shall be right."

▋ Although alimony on one hand and allocation of property rights on the other, have a different purpose they are still closely related in the matter of determining the amount to be allowed. See Knipfer v. Knipfer, 259 Iowa 347, 351–353, 144 N.W.2d 140.

In this area we have consistently held precedents are of little value, any determination as to what is right being dependent on the facts of each case. Cooper v. Cooper, 259 Iowa 277, 282, 144 N.W.2d 146, and Lessenger v. Lessenger, 258 Iowa 170, 172, 138 N.W.2d 58.

This court has also repeatedly taken the position that in resolving the troublesome problem inherent in awarding alimony and effecting a distribution of property rights, many factors must be considered. See Gerk v. Gerk, Iowa, 158 N.W.2d 656, and citations.

▋ Use of the following general formula may be helpful in arriving at an equitable determination of financial or property rights and obligations of the parties to a divorce action, though each element is not always present or important.

A. PREMARITAL CRITERIA:

1. Social position and living standards of each party.

2. Their respective ages.

3. Their respective mental or physical condition.

4. What each sacrificed or contributed, financially or otherwise, to the marriage.

5. The training, education and abilities of each party.

B. POSTMARITAL CRITERIA:

1. Duration of the marriage.

2. Number of children, their respective ages, physical or mental conditions, and relative parental as opposed to financial needs.

3. Net worth of property acquired, contributions of each party thereto by labor or otherwise, net worth and present income of each party.

4. Conduct of the spouses and particularly that of the guilty party.

5. Present physical and mental health of each party.

6. Earning capacity of each party.

7. Life expectancy of each party.

8. Any extraordinary sacrifice, devotion or care by either spouse in furtherance of a happy marriage or in preservation of the marital relationship.

9. Present standards of living and ability of one party to pay balanced against relative needs of the other.

10. Any other relevant factors which will aid in reaching a fair and equitable determination as to respective rights and obligations of the parties.

See in this regard Gerk v. Gerk, and Lessenger v. Lessenger, both supra; Britven v. Britven, 259 Iowa 650, 658, 145 N.W.2d 450; Cooper v. Cooper, 259 Iowa 277, 282, 144 N.W.2d 146; Jeffries v. Jeffries, 258

Iowa 623, 627, 138 N.W.2d 882; Pfab v. Pfab, 257 Iowa 303, 306, 132 N.W.2d 483; MacDonald v. MacDonald, 120 Utah 573, 236 P.2d 1066, 1070; 27B C.J.S. Divorce § 295(2), page 290; and 24 Am.Jur.2d, Divorce and Separation, sections 630–636, pages 750–757, sections 925–934, pages 1052–1069; Nelson on Divorce and Annulment, Second Ed., section 14.135.

■ Here, of particular significance because of defendant's hesitancy in revealing his financial dealings, is this statement in Rider v. Rider, 251 Iowa 1388, 1393, 105 N.W.2d 508, 511: "'To enable the court to make an equitable distribution of the property of the parties, both parties must fully disclose their conditions as to property.' 27B C.J.S. Divorce § 291(1), p. 264, and cases cited. In the consummation of division of property the parties are required to exercise utmost good faith and to make full disclosure of all material facts, including their circumstances and any other facts which might affect division. United States National Bank of Denver v. Bartges, 122 Colo. 546, 244 P.2d 658; Rentel v. Rentel, 39 Wash.2d 729, 238 P.2d 389; Hannan v. Hannan, Ky., 256 S.W.2d 485. A more complete and candid disclosure would have been helpful in this case."

■ As heretofore disclosed these parties started their married life with little or no assets and by joint efforts, over a period of 28 years, managed to accumulate a substantial estate. In fact there is nothing in the record which compels us to conclude other than that plaintiff's efforts and labor were as productive and fruitful as those of defendant. Her rights should be accordingly determined.

■ Bearing in mind defendant was granted all right, title and interest in any property, real and personal, possessed by him, we find neither absence of right nor inequity in the adjudication relative to distribution of property rights, or alimony granted plaintiff. In support hereof see

Kjar v. Kjar, Iowa, 154 N.W.2d 123, 126; Arnold v. Arnold, 257 Iowa 429, 440, 133 N.W.2d 53; Rider v. Rider, 251 Iowa 1388, 1390–1393, 105 N.W.2d 508; and Annos. 34 A.L.R.2d 313, 341.

Under existing conditions there is no escape from the conclusion, trial court was correct in granting plaintiff judgment against defendant for $50,000 as an allocation of property rights, and in awarding her alimony in the sum of $150 each month, to be paid by defendant until one or the other of the parties shall die, or plaintiff shall sooner remarry.

VII. This brings us to defendant's contention, trial court erred in dismissing his counterclaim for divorce based on claimed desertion.

On this subject Code sections 598.8(2) and 598.9 provide, in effect, a divorce may be decreed when one spouse willfully deserts the other or absents himself or herself, as the case may be, without reasonable cause, for the space of two years.

No useful purpose will be served by any extended reanalysis of the evidence. It discloses plaintiff left defendant for good cause; when told of her plans to leave he advised she go ahead; when plaintiff returned to the home in an effort to secure some of her personal belongings she opened the door to a possible reconciliation which defendant promptly closed by calling her a "whore" and telling her to get off and stay off.

We held in Bennett v. Bennett, 259 Iowa 227, 230, 144 N.W.2d 328, four elements are essential to constitute desertion: (1) cessation of the marriage relation; (2) intent to desert; (3) continuance of the desertion for the statutory two year period; (4) absence of consent or misconduct of the deserted party.

■ It is at once evident defendant's counterclaim was devoid of substance or merit, and dismissal by trial court was proper.

VIII. Defendant also expresses dissatisfaction with the finding that at time plaintiff left she took $200 from a can in the basement, he contending the amount taken was $2000.

There is no need to belabor this matter. Trial court was in a better position than are we to determine credibility of the witnesses and weight to be accorded their testimony.

The record discloses no reason for us to disagree with the court's finding on this issue.

IX. On plaintiff's application trial court granted her judgment against defendant for a total of $2000 attorneys' fees. That award is here neither challenged nor does it appear to be unreasonable.

Subsequently this court ordered defendant pay plaintiff $500 to apply on fee for her attorneys in defending against the appeal taken by defendant, reserving for later determination the matter of additional fees, if any, to be allowed.

Defendant then filed a motion to strike plaintiff's application for allowance of additional fees. That motion is overruled.

Commendably plaintiff's attorneys attached to the application for allowance of fees on appeal, an itemized statement of time devoted and expenses incurred.

An examination of the record, together with the aforesaid itemization, discloses plaintiff's attorneys have devoted much time and effort, and have incurred approximately $407 expenses, in the protection of plaintiff's rights relative to this appellate proceeding.

Plaintiff is hereby allowed a fee of $3407 in addition to any fees heretofore awarded, to be paid by defendant for legal services performed, and expenses incurred, by her attorneys in connection with this appeal. See Wignall v. Wignall, Iowa, 161 N.W.2d 791, 798; Bullocks v. Bullocks, 259 Iowa 496, 500, 144 N.W.2d 924; and

Arnold v. Arnold, 257 Iowa 429, 444, 133 N.W.2d 53.

Costs are taxed to defendant.

Affirmed.

All Justices concur.