In re The MARRIAGE OF Norma Gladys ROMIG and Harold J. Romig.

Upon the Petition of Norma Gladys ROMIG, Appellee,

and concerning Harold J. ROMIG, Appellant.

Upon the Petition of Harold J. ROMIG, Appellant,

and concerning Norma Gladys ROMIG, Appellee.

No. 55656.

Supreme Court of Iowa.

May 23, 1973.

Sackett & Sackett, Spencer, for appellant.

W. E. Hanson, Spirit Lake, for appellee.

Heard by MOORE, C. J., and MASON, REES, UHLENHOPP and McCORMICK, JJ.

REES, Justice.

This is an appeal by the respondent-husband, Harold J. Romig, from the provisions of a decree entered in a dissolution of marriage proceedings under chapter 598, The Code, 1971. Respondent appeals from those provisions of the decree having to do with the division of property and the allowance of attorney's fees for petitioner's attorney.

The parties were married at Garnavillo, Iowa while both were living in Cedar Rapids, on August 14, 1960. It was the second marriage for respondent and the fourth for petitioner. This appeal is from a decree entered in the eighth divorce or dissolution action instituted by the parties; seven actions were instituted by petitioner, and one by respondent. The first action, (for divorce) was filed by petitioner two months after the marriage of the parties. In the matter before us, the petitioner-wife filed her petition for dissolution of marriage on March 11, 1971, and subsequently, on May 28, 1971 respondent-husband filed an amendment to his answer previously filed and his own petition for dissolution by way of counterclaim.

At the time of the marriage, petitioner-wife was employed at a country club in Cedar Rapids as a cocktail waitress or hostess, and respondent was engaged in the tavern business. The record indicates that at the time of the marriage petitioner had about $500 in cash and owned an interest in a residential property in Anchorage, Alaska. In addition to the tavern business which respondent operated in a rental building in Cedar Rapids, he owned an acreage on the outskirts of the city, an automobile, three policies of life insurance payable to his son, the issue of a prior marriage, and household furnishings.

In 1962 respondent's acreage, or a portion of it, was sold on contract; the entire acreage had apparently been subject to a mortgage, and the proceeds for the portion sold were assigned to the savings and loan association holding the first mortgage on the land. Respondent sold his tavern and the parties moved to Arnold's Park, where they purchased a cafe and tavern on contract for the sum of $50,000. This enterprise is identified in the record as Fisherman's Wharf, and is described as Lot Two, Block G, Okoboji Park, in the incorporated town of Okoboji. Later the parties purchased on contract a residence property in Okoboji, and a vacant lot described as Lot 72, Center Lake Heights, subdivision of the town of Spirit Lake.

At trial the parties stipulated they were the co-owners of the three contracts, that is to say: the contract for the purchase of the Fisherman's Wharf property, the residence property and the vacant lot. They further stipulated that at time of trial they had an equity in the tavern contract of $26,500, and an equity in the Center Lake vacant lot contract of $1500. The parties were unable to stipulate or agree as to the equity they held in the contract on the residence property, although it was established there was a balance due on the contract for the purchase of the residence of $4700.

There is some confusion in the record as to the equity of petitioner in the Alaska property. A copy of a contract was introduced which would tend to indicate that when it was sold in 1965, petitioner had an equity of $8872.09 in it, although both petitioner and respondent testified she netted from the sale of the property only about $4000.

Trial court, in its decree, awarded one-half interest in the equity in the Center Lake lot, a half interest in the business known as Fisherman's Wharf, and a half interest in the equity in the residence of the parties, to each of the parties. The court awarded the household goods to the parties in equal proportions. To the respondent, it awarded two automobiles, a pickup truck, two snowmobiles, a snowblower, the Cedar Rapids property, the equity in the contract on the farm premises sold, a diamond ring, and cash in the amount of $1662.00. Such an award resulted in setting over to the respondent property and monies to the value of $31,662.00, and to the petitioner property and equities therein to the value of $18,600.00. It should be noted the monies petitioner had at the time of her marriage to respondent, and all of the monies realized by her from the sale of the Alaska property, had been expended during the marriage relationship.

No provisions were made for attorney's fees for petitioner's attorney in the original decree which was filed on January 18, 1972, although the court reserved jurisdiction for the purpose of making a later allowance of attorney fees. By supplemental decree filed March 3, 1972, following hearing, the trial court found and determined that the fair and reasonable value of the services performed by counsel for petitioner to be $1250.00, of which sum petitioner had paid $100 and respondent had paid $125. The court ordered and determined that each party should pay $625 of the fee so allowed, and that each party should be given credit for sums paid by them respectively.

From the above referred to provisions of the original decree, and the supplemental decree allowing attorney's fees, respondent has appealed, asserting as propositions requiring reversal:

(1) Property awarded to petitioner was excessive and not justified by the evidence; and

(2) There is no justification for award of attorney's fees to petitioner's attorney.

■ I. The marriage relationship of the parties here existed for a little over eleven years, although tenuously, and admittedly there were several separations during the continuance of the marriage. At the time of the entry of the decree, petitioner was almost 53 years of age, and the respondent 59 years of age.

Petitioner has a high school education, part of which was obtained in a private school, and has had some post high school training in typing, shorthand and English, about the equivalent of a high school commercial course. She has never used her commercial training in any gainful employment, and is not presently qualified to engage in any work other than as a waitress or hostess, or possibly as the manager of an eating establishment. At trial, petitioner testified the state of her health was average, although she faced major surgery for a colonic condition, and it is apparent she had considerable health difficulties

during the marriage relationship of the parties, and at one time was a patient at the Mental Health Institute at Cherokee.

Respondent attended Luther College for two years, and left during the depression years to go to work. He testified he had always been in the hotel, restaurant and tavern business, and that whatever accumulation of property he was able to get together, he had built up through his own labor, as he received no inheritance. from anyone and had accumulated his property on his own. So far as the record discloses, his health situation is satisfactory.

We have taken the position repeatedly that in resolving the troublesome problems inherent in effecting a distribution of property, many factors must be considered, and we have also consistently held precedents are of little value, and any determination as to what is right is dependent upon the facts of each case. In re Marriage of Cook, 205 N.W.2d 682 (Iowa; filed March 28, 1973); Gerk v. Gerk, 158 N.W.2d 656 (Iowa 1968), and citations; Cooper v. Cooper, 259 Iowa 277, 282, 144 N.W.2d 146, 149; Lessenger v. Lessenger, 258 Iowa 170, 172, 138 N.W.2d 58, 61.

We have made an exhaustive review of the record in this case, and have applied the premarital and postmarital criteria laid down in Schantz v. Schantz, 163 N.W.2d 398 (Iowa 1968). We have given no consideration to those postmarital criteria in *Schantz, supra,* which were applicable to the fault concept in divorce matters prior to the enactment of the present dissolution statute, chapter 598, The Code, 1971.

Our review is *de novo,* and it is our duty to examine the whole record and adjudicate rights anew on those propositions properly presented provided issue has been raised and error, if any, is preserved in the course of the trial proceedings.

We are unable to agree with appellant the award of property made by the trial court to petitioner was excessive. Such award was amply justified by the record evidence in the case. We affirm trial court's decree insofar as it relates to the settlement and distribution of the property rights of the parties.

■ II. In the second division of respondent's brief and argument, he contends: (a) Iowa law is void of any provision allowing the Iowa court to make other than temporary orders for payment of attorney fees; (b) in the absence of statutory authority, courts have no authority to award attorney fees to an adverse party; (c) Iowa law is void of any legislative dictate awarding attorney fees *solely* to *wife's* attorney; and (d) the payment of fees by the husband to wife's attorney is an outgrowth of the concept of paternalism which prevailed in this country until the past decade. The court should reexamine this position in view of enlarging rights to women and an equalization of men's and women's rights.

We perceive no merit in these contentions of appellant. Certainly under the provisions of section 598.21, The Code, allowances of attorney fees are permitted. Section 598.21 provides:

"When a dissolution of marriage is decreed, the court may make such order in relation to the children, property, parties, and the maintenance of the parties as shall be justified.

"Subsequent changes may be made by the court in these respects when circumstances render them expedient."

Section 598.21, The Code, 1971, supplanted section 598.14, Code, 1966 which provided:

"When a divorce is decreed, the court may make such order in relation to the children, property, parties, and the maintenance of the parties as shall be right. * * * *"

Certainly the provisions of both sections (598.14, Code, 1966, supplanted by 598.21

Code, 1971) contemplated and anticipated the allowance of attorney fees in a proper case. This proposition is so well established that citation of authority is not deemed necessary. There is no merit in respondent's contention in this regard.

■ III. The application of petitioner's counsel for additional fees for services rendered in this appeal has been submitted with the appeal.

We have examined the application filed by petitioner's attorney setting out an itemization of time devoted to the appeal, and for expenses incurred in connection therewith. Incorporated in the application is a showing the petitioner has incurred $76.65 for reporter's transcript of testimony and $41.92 for costs for printing appellee's brief and argument. These fees will be properly taxed as a part of the court costs, and we need not consider them in connection with the application for fees. Petitioner's counsel, in his itemized statement, states he expended 38.4 hours in research and other work in the preparation of the abstract of record and brief and argument, which does not include the time spent in the presentation of oral argument at the time of the submission of the appeal. The application further indicates an anticipated expenditure of $65 for transportation, meals and lodging in Des Moines at the time of the submission of the appeal.

Petitioner-wife is hereby allowed the sum of $815 in addition to any fees heretofore awarded to be paid by respondent for legal services performed and expenses incurred by petitioner-wife's attorney in connection with this appeal. This matter is remanded for the entry of judgment in the trial court for such additional fees and expenses.

We find no reversible error. This case is therefore affirmed.

Affirmed.