**In re the MARRIAGE OF Judith E. STRATTON and Robert L. Stratton.**

**Upon the Petition of Judith E. Stratton, Appellant,**

**and concerning Robert L. Stratton, Appellee.**

**No. 56892.**

Supreme Court of Iowa.

April 14, 1976.

James L. Chipokas and John C. Platt, Cedar Rapids, for appellant.

Robert E. Ford, Cedar Rapids, for appellee.

Submitted to MOORE, C. J., and MASON, RAWLINGS, REES and REYNOLDSON, JJ.

MASON, Justice.

Judith E. Stratton, petitioner in a dissolution proceeding seeking termination of her marriage to Robert L. Stratton, appeals from that portion of the trial court's decree making distribution of the assets and liabilities of the parties and from the trial court's failure to award petitioner attorney fees for services rendered her in the trial court.

The trial court granted the dissolution and awarded Mrs. Stratton custody of Daniel Robert, the only child born of this marriage.

"When a dissolution of marriage is decreed, the court may make such order in relation to the children, property, parties, and the maintenance of the parties as shall be justified." Section 598.21, The Code.

It is further provided in section 598.17 that "the court shall, based upon competent and relevant evidence, in such decree provide for the division of the assets of the parties and reasonable support or maintenance of any dependent children or either spouse."

In this equitable proceeding our review is de novo. Rule 334, Rules of Civil Procedure.

In considering alimony and property distribution the guidelines are set forth in *Schantz v. Schantz*, 163 N.W.2d 398, 405 (Iowa 1968), as modified in *In Re Marriage of Williams*, 199 N.W.2d 339, 345 (Iowa 1972).

Robert and Judith Stratton were married November 15, 1969, in Rock Island, Illinois. They were both 30 years of age at the time of the October 1973 dissolution hearing. Robert had been married twice before. The child from the first has since been adopted. Two children were born in the second marriage, but Robert was not given custody of them. Judith had been married once before; three children, aged 7, 8 and 12 at the time of hearing, were the issue of this previous marriage. These children lived with the parties with Dan Robert, born June 17, 1971.

During the three year span in which the parties remained together in Cedar Rapids both parties succeeded in creating a huge debt far in excess of the value of their listed assets. The parties' stipulation as to assets and liabilities shows: (1) mobile home worth $3995.00 with debt outstanding of $6,848.96; (2) a 1966 Pontiac valued at $935.00 and an unvalued color television set, with $1745.00 outstanding on both; (3) a 1968 Chevrolet Caprice worth $600.00 with $781.92 outstanding (this car was purchased by Robert after the parties separated); (4) a boat, motor and trailer worth $150.00, as well as a washer-dryer, vacuum cleaner, household goods and a junked 1956 GMC pickup, upon which valuation figures do not appear but which retain an outstanding debt of $3200.00; (5) an unoperational 1960 ½ ton pickup truck which is worthless; and (6) two promissory notes to the Farmers State Bank totalling $500.00, debt to a credit union of $383.00 and to Goodyear of $376.18, and medical bills amounting to $292.00. All in all, liabilities exceed these assets by $8,447.06. Not included in this listing was a Christmas club account which was to total $500.00 by November 15, 1973, Judith's checking account containing some $15.00, and tools and tool shed.

In the face of these debts Robert and Judith have limited defenses. Both completed the tenth grade. Robert at time of trial lived in a $12.00 per week sleeping room and worked a 40 hour week at Iowa Manufacturing Company. His take-home weekly net income is $122.27 after tax withholding, deductions of $25.00 per week to the credit union, $9.88 per month for the children's hospitalization and life insurance and $8.60 per month union dues. Robert was also netting $25.00 to $30.00 per week by driving a school bus part time.

Robert's financial statement indicates a monthly net income of $640.62 (not including a subsequent hourly wage raise of 41 cents and the job driving the school bus). Since his monthly expenses are stated to be $732.75, it is not surprising he has fallen behind on loan payments.

Judith receives $275.00 per month from the A.D.C. program and hopefully $10.00

weekly alimony as ordered by the court. Apparently the $25.00 per week support for Dan Robert is paid to A.D.C. From the total $315.00 Judith receives from these sources are deducted monthly expenses of $305.30, which include the trailer payment, lot rent, utilities, food and the children's clothing (as indicated in her affidavit). Judith hopes to become more self-supporting by participation in the "WIN program" which tests occupational abilities and offers on-the-job training. In any event, her previous work experiences were as a store clerk and waitress, the type of jobs for which she tells us she could expect only the minimum wage. At the time of the hearing Judith was unemployed.

Faced with the unenviable task of apportioning the assets and liabilities, the trial court in the findings of fact and conclusions of law noted of Robert and Judith:

"Between them they have six children whom they are obliged to support but who have been supported in substantial part by the taxpayers, and it appears that this reliance on welfare must continue. The parties have mismanaged their lives and their finances. They would have the court wave some sort of magic wand which would make their problems disappear. No such easy solution is possible. The Court can only apportion equitably the limited resources available. The obligations and living expenses of the parties are far beyond their capabilities."

Judith was given custody of Dan Robert and awarded the mobile home, 1966 Pontiac, color television set, washer and dryer, the two pickups, the boat, motor and trailer, household goods and furniture and her checking account. She was to assume all installment payments on the encumbered assets and, thus, any cash resulting from sale of these items was to be hers. It was ordered any deficiencies which might arise from repossession were to be mutual obligations of the parties.

Robert, likewise, was given the 1968 Chevrolet Caprice, along with its installment payments, and his tools and shed. He was ordered to assume the obligations on the promissory notes, the Goodyear and medical accounts and the credit union debt.

The Christmas club account was awarded Robert in an amount equal to court costs excluding attorneys' fees with the remainder to go to each party equally. As stated Robert was ordered to pay $10.00 alimony and $25.00 child support per week.

A somewhat more condensed version of the decree indicates Judith received assets valued at $5345.00 (including the $15.00 checking account and one half of the Christmas club account). Her liabilities total $11,793.96. By the time of the dissolution hearing she had assumed payments on the trailer debt, lot rental, and "trailer plates." In short, the decree has the effect of burdening her with almost $4000.00 additional indebtedness over and above that on the trailer. If Judith's affidavit of monthly expenses is accurate, she will be left with $10.00 at the end of each month to meet payments on this $4000.00 debt, assuming the $25.00 child support payments are in fact paid to the A.D.C. program.

Robert received assets in total ascertainable value of $850.00 which include his share of the Christmas club account. No value has been assigned the tools and tool shed. His monthly take-home pay including income from the school bus driving job, but not including deductions of $25.00 weekly for the credit union, ranges from $690.00 to $710.00, depending upon the net income from the driving job. As nearly as it is possible to deduce from the record as a whole and from Robert's financial statement, his monthly expenses will total $633.00 under the decree, plus the costs of his assumption of the accounts totalling $668.00. Obviously, Robert will also be left with little at the end of each month.

 I. Petitioner contends the property and liability distribution was inequitable and that she should also have been awarded attorney fees for services rendered her in the trial court proceedings. These contentions give rise to the two issues presented for review.

In consideration of these contentions this court, like the trial court, is limited by the

amount of money available to meet the expenses and needs of the parties. As in most cases of this type the needs of one party exceed the other's ability to pay. Faced with the resources shown by the record we conclude the provisions made by the trial court relating to the distribution of the assets and liabilities of the parties are just and equitable. The same is true of the court's failure to award attorney fees for services at the trial court level.

II. Petitioner's application for attorney fees for services rendered in this appeal and for an allowance of temporary maintenance and expense money pending the appeal were ordered submitted with the appeal.

Without in any way attempting to place a valuation on the services of petitioner's attorneys or what they should be paid we conclude each party should pay his or her own attorney fees on appeal. Petitioner's application for maintenance and support during the pendency of this appeal is denied.

Costs on this appeal are taxed to respondent.

The case is—Affirmed.