W. A. ROHLF, Appellee, v. HENRY KASEMEIER AND THE STATE OF IOWA, Appellants.

**Criminal law:** STATUTES: CONSTRUCTION. In the construction of
1 criminal statutes nothing can be added by intendment, but they are to be strictly construed, and in cases of doubt the construction most favorable to one charged with crime will be adopted.

**Same.** All the language of a statute must be considered in its
2 construction and such an interpretation placed upon any word thereof as was within the evident intent of the legislature.

**Same:** COMBINATIONS IN RESTRAINT OF TRADE: PERSONAL SERVICES.
3 The term "commodity," as used in Code, section 5060, relating

to an unlawful combination, pool, or trust to control the price or limit the quantity of any article of merchandise, or commodity manufactured, mined, produced or sold in this State, does not comprehend personal services, either skilled or unskilled.

**Same:** PHYSICIANS: AGREEMENT AS TO PROFESSIONAL CHARGES. The statute referred to is aimed at unlawful combinations in restraint of trade, and does not prohibit physicians from associating themselves together for the purpose of agreeing upon a schedule of prices to be charged for their professional services.

*Appeal from Bremer District Court.*—HON. C. H. KELLEY, Judge.

WEDNESDAY, NOVEMBER 18, 1908.

THIS is a *habeas corpus* proceeding brought to determine the legality of an indictment returned against the plaintiff by the grand jury of Bremer County, Iowa. A demurrer to the petition was overruled, and the trial judge discharged the plaintiff, and released him from the custody of the sheriff by whom he was held. Defendants appeal.— *Affirmed.*

*Bernard Stenzel,* County Attorney, and *J. T. Sullivan,* for appellants.

*Sager & Sweet* and *Hageman & Farwell,* for appellee.

DEEMER, J.—Plaintff, who is a physician and surgeon, with thirteen others of like profession, were indicted by the grand jury of Bremer County for the crime of entering into an agreement, combination, or understanding to fix and maintain fees and charges to be exacted for medical and surgical services in said county. Plaintiff was arrested under the indictment, and thereafter brought habeas corpus proceedings before the Honorable C. H. Kelley, Judge, to secure his release from custody, claiming

that he was unduly and illegally restrained of his liberty, for the reason that the indictment charges no offense known to our laws, and that, if there be a law forbidding such acts as are charged against him, it is unconstitutional and void, in that it deprives him of his liberty, prevents him from acquiring or possessing property, and deprives him of his safety and the pursuit of his happiness, and deprives him of the right of contract and of the equal protection of the laws. The charging part of the indictment reads as follows:

The said L. C. Kern, Dr. C. T. Brown, Dr. O. L. Chaffee, Dr. W. A. Rohlf, Dr. H. C. Jungblut, Dr. B. C. Dunkelberg, Dr. C. H. Graening, Dr. Stafford, Dr. A. G. Rennison, Dr. Patterson, Dr. J. F. Auner, Dr. Murphy, Dr. Bradford, Dr. Cross, on the 30th day of July, in the year of our Lord one thousand nine hundred and seven in the county aforesaid, being physicians and surgeons located and practicing their professions in the county of Bremer, State of Iowa, did then and there willfully, unlawfully, and maliciously conspire, combine, confederate, and agree with each other to create, organize, and enter into, and did then and there willfully, unlawfully, and maliciously enter into and become, a member of and a party to a trust, pool, agreement, contract, combination, confederation, and understanding to fix, establish, and regulate and maintain the price of a commodity in the county of Bremer, State of Iowa, and did then and there willfully and unlawfully fix, regulate, and establish the price of medical service and medical skill, and the profit, benefit, fee, and compensation to be received therefor, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Iowa.

The demurrer challenges these contentions of plaintiff, and it is stoutly insisted upon this appeal that the indictment does charge an offense, and that the statute under which it was found is a valid exercise of legislative power. As the case must turn upon the construction of a statute,

we here copy the material parts of the section under which
the indictment was found.   It is section 5060 of the Code,
reading as follows:

Pools and Trusts.   Any corporation organized under
the laws of this or any other State or county for trans-
acting or conducting any kind of business in this State, or
any partnership, association or individual, creating, enter-
ing into or becoming a member of, or party to any pool,
trust, agreement, contract, combination, confederation or
understanding with any other corporation, partnership,
association, or individual, to regulate or fix the price of
any article of merchandise or commodity, or to fix or limit
the amount or quantity of any article, commodity or mer-
chandise to be manufactured, mined, produced or sold in
this State, shall be guilty of a conspiracy.

The first point to be decided is:   Do the acts charged
constitute a crime under this section of the Code?   It
will be noticed that it forbids a combination, agreement,
or understanding to regulate or fix the price of any article
of merchandise, or commodity, or of merchandise to be
manufactured, mined, produced, or sold in this State.   The
primary inquiry is:   Are the charges of a physician or
surgeon for his medical skill or ability an article of mer-
chandise or commodity to be produced or sold in this
State.   For appellant it is contended that the word "com-
modity" is broad enough to cover the charge made for
professional services or skill, and that the trial court was
in error in holding to the contrary.

It must be remembered that the word is found in a
criminal statute, and that in the interpretation of such
statutes different rules apply from those which obtain in
civil matters, or where contracts are involved.
1. CRIMINAL LAW: Nothing is to be added to such statutes by
statutes: con-
struction.       intendment, and, as a rule, they are to have
a strict construction.

Moreover, it is well settled that, in construing any

statute, all the language shall be considered, and such interpretation placed upon any word appearing therein as was within the manifest intent of the body which enacted the law. Much of necessity depends upon the context and upon the usual and ordinary significance of the language used.

2. SAME.

Now, the word "commodity" is derived from the Latin "Commoditas," and means primarily a convenience, profit, benefit, or advantage; but in referring to commerce it comprehends everything moveable—that is, bought or sold—except animals. See Webster's International Dictionary; *Best v. Bauder,* 29 How. Prac. (N. Y.) 489; *Barnett v. Powell,* 16 Ky. 409; *Queen Ins. Co. v. State,* 86 Tex. 250 (24 S. W. 397, 22 L. R. A. 483). This word appearing in another statute (McClain's Code, section 5454) was held to cover insurance, and it was decided that a combination to fix insurance rates was illegal. See *Beechley v. Mulville,* 102 Iowa, 602. But in that case the parties were not selling their own services. They were, as the opinion says, selling insurance, which was regarded as a commodity as used in the statute then under consideration. Here the indicted defendants were for a price giving their own services, or perhaps selling them, and the question is: Were these personal services a commodity?

3. SAME: combinations in restraint of trade; personal services.

As already indicated, the word must be taken in connection with the others used in the statute, and it is manifest that the commodity referred to must have been such as could be manufactured, mined, produced, or sold in the State, and the price was to be of an article of merchandise or commodity. If the contention of appellant be correct, the statute covers all kinds of personal labor, both skilled and unskilled, under the term "commodity." Indeed, this is the broad claim made by counsel. Now, whilst there is a class of political economists who treat labor as so much merchandise, the wage being regulated simply by supply

and demand, there is another class, which, taking account of the personal equation, sees in it something more than a commodity, and refuses to subscribe to the doctrine that supply and demand alone regulate the price.   This latter class of economists refuses to accept the doctrine that a man is rich because he has stored away within him many days' work, and are convinced that his necessities, quite as often as the demand for his labor, fixes the stipend which he is to receive.   In other words, the laborer, skilled or unskilled, is not regarded as standing on an equality with him who barters in goods and merchandise.   It is not, of course, within the province of courts of justice to adopt or promulgate any particular system of political science; but in the interpretation of statutes they must take notice of current political theory and conviction.   If we were to adopt the view so strongly presented by appellant's counsel, it would be on the assumption that the associated words "merchandise" and "commodity" include the wages to be paid for labor, because labor is a sort of merchandise, subject to barter and sale as other goods.   A fundamental rule of construction is that, where particular words are followed by general ones, the general are restricted in meaning to objects of a like kind with those specified. *State v. Stoller,* 38 Iowa, 321; *People v. Railroad,* 84 N. Y. 565; *McDade v. People,* 29 Mich. 50.   Now, the term "merchandise" is special rather than general, and has reference primarily to those things which merchants sell either at wholesale or retail. *Jewell v. Board,* 113 Iowa, 47. "Commodity" is a broader term, and, when used as in the statute now under consideration, means almost any description of article called moveable or personal estate. *Barnett v. Powell,* 16 Ky. 409; *Shuttleworth v. State,* 35 Ala. 415; *State v. Henke,* 19 Mo. 225.

Used in connection with the term "merchandise," and qualified as it is in the latter part of the section by the words "manufactured, mined, produced, or sold," it is

manifest that the statute was not intended to, and did not, include labor either skilled or unskilled. It must be remembered that the statute is a criminal one, and that such statutes must be strictly construed; and, in case of doubt, the construction must be adopted most favorable to the party charged. The only ground upon which appellant can stand with any show of plausibility is that labor is a commodity to be bought, sold, or produced, as merchandise. This is a strained and unnatural construction, and gives to the word "commodity" a meaning which is perhaps permissible, but is not the commonly accepted one. Under our statutes, words and phrases are to be construed according to the context and the approved usage of the language. Code, section 48. With this in mind, we are constrained to hold that labor is not a commodity within the meaning of the act now in question. As supporting this conclusion, see *Hunt v. Riverside Club,* 140 Mich. 538 (104 N. W. 40, 12 Detroit Leg. N. 264); *Queen v. State,* 86 Tex. 250 (24 S. W. 397, 22 L. R. A. 483). It seems to be the almost universal holding that it is no crime for any number of persons without an unlawful object in view to associate themselves together, and agree that they will not work for or deal with certain classes of men, or work under a certain price or without certain conditions. *Carew v. Rutherford,* 106 Mass. 14 (8 Am. Rep. 287); *Commonwealth v. Hunt,* 4 Metc. 134 (38 Am. Dec. 346); *Rogers v. Everts,* 17 N. Y. Supp. 268; *United States v. Moore* (C. C.) 129 Fed. 630.

The statute in question was aimed at unlawful conspiracies or combinations in restraint of trade, and was manifestly not intended to cover labor unions. It is the right of miners, artisans, laborers, or professional men to unite for their own improvement or advancement or for any other lawful purpose, and it has never been held, so far as we are able to discover, that a union for the purpose

4. SAME: physicians: agreement as to professional charges.

of advancing wages is unlawful under any statutes which have been called to our attention. As said by Judge Taft in *Phelans* case (C. C.) 62 Fed. 803: "Such unions, when rightly conducted, are beneficial in character." And it would be a strained and unnatural conclusion to hold that a statute aimed at pools and trusts should be held to include agreements as to prices for labor because the word "commodity" is used therein. As the right to combine for the purpose of securing higher wages is recognized as lawful at common law, a statute enacted to prohibit pools and trusts should not be held to apply to combinations to fix the wages for labor, unless it clearly appears that such was the legislative intent. Whatever of doubt there may be regarding the power of the Legislature to do so, we do not think that the act in question covers combinations to fix the labor price whether that labor be skilled or unskilled.

Appellants rely largely upon the celebrated cases of *Loewe v. Lawler et al.,* 208 U. S. 274 (52 L. Ed. 488, 28 Sup. Ct. 301) and *In re Debs,* 158 U. S. 564 (15 Sup. Ct. 900, 39 L. Ed. 1092), and other like cases in support of their construction of the statute; but in our opinion none of these cases are applicable. The *Debs* case is not in point. Others involved a pool between manufacturers and still other boycotts. In the *Loewe* case defendants were engaged in a boycott of plaintiff and its customers, and were in the performance of acts calculated to destroy plaintiff's business by driving away customers, by threats and coercion were driving away plaintiff's employees, and circulating false reports regarding plaintiff and its business, the effect of which was to destroy its interstate trade. These acts were held to be an unlawful interference with interstate commerce, and a violation of the anti-trust law known as the "Sherman Act" (Act July 2, 1890, c. 647, 26 Stat. 209 [U. S. Comp. St. 1901, p. 3200]). The statute before us has nothing to do with commerce; nor does it have to do with restraint of trade or commerce as does the

Sherman act. It nas to do with pools and trusts organized in this State to fix or regulate the price of any article or commodity, or to fix or limit the amount or quality of any article, commodity or merchandise to be produced or sold in the State. Surely it has no reference to the amount or quality of labor to be produced or sold. Such a construction would be ridiculous. And, if it will not bear that interpretation, it follows that the word "commodity," when used with reference to prices, should not be held to include labor. No case has been cited which supports appellant's contention, and we have not been able to find any. On the other hand, the following lend support to our conclusions: *Cleland v. Anderson,* 66 Neb. 252 (92 N. W. 307, 5 L. R. A. (N. S.) 136); *Downing v. Lewis,* 56 Neb. 386 (76 N. W. 900); *State v. Associated Press,* 159 Mo. 410 (60 S. W. 91, 51 L. R. A. 151, 81 Am. St. Rep. 368). It would be stretching the statute entirely too far to hold that it covers combinations to fix the price of labor. That the practice of medicine and surgery is labor no one, we think, will question.

The trial court was right in discharging the plaintiff, and its judgment must be, and it is, *affirmed.*