**In re the MARRIAGE OF John R. TUCKER and Doris J. Tucker, upon the Petition of John R. Tucker, Appellee,**

**and concerning Doris J. Tucker, Appellant.**

**No. 55875.**

Supreme Court of Iowa.

Dec. 19, 1973.

Don Boddicker, Vinton, for appellant.

James L. Chipokas and Jon M. Kinnamon, Cedar Rapids, for appellee.

Heard before MOORE, C. J., and MASON, RAWLINGS, UHLENHOPP and McCORMICK, JJ.

RAWLINGS, Justice.

Respondent appeals from dissolution of marriage adjudication. We affirm in part, reverse in part.

John R. Tucker (John) and Doris J. Tucker (Doris) were married November 29, 1947. The two children born to them are Nancy Jean and Richard Alan, 19 and 15 respectively at time of trial.

February 7, 1972, John filed petition for dissolution of the instantly involved 24 year marriage.

September 14, 1972, trial commenced.

September 26, 1972, decree was entered. In material part it generally provides, respondent be awarded household goods; right to occupy the home until January 10, 1975; U.S. Savings Bonds, Series E, value unknown, owned by Doris at time of the marriage; $7000 as property division, payable $1000 each year commencing January 10, 1975; and alimony payable $50.25 biweekly from September 26, 1972 "until the first pay day following January 10, 1975."

John was awarded custody of Richard, the minor son; considerable personalty; the home in which these parties had an equity valued at about $12,000; life insurance having approximately $3000 cash value; 122 shares of stock in Raytheon Company worth $3660; and other miscellaneous items of personalty having a total given value of about $2155. Additionally

John was ordered to assume and pay $1100 in accumulated debts.

Respondent here assigns multiple and unduly prolix propositions relied on for a reversal. These are in turn reduced to 11 questions, some of which are overlapping. They will not be individually considered.

As best we can determine the ultimate issues presented on this appeal relate to (1) adequacy of conciliation procedural requirements; (2) sufficiency of evidence upon which the dissolution of marriage was decreed; (3) division of assets; and (4) alimony awarded respondent.

■ I. Our review is de novo. We accord weight to trial court's findings but are not bound by them. See Iowa R.Civ.P. 344(f)(7); In re Marriage of Ried, 212 N.W.2d 391 (Iowa, opinion filed November 14, 1973); In re Marriage of Jennerjohn, 203 N.W.2d 237, 240 (Iowa 1972); Geisinger v. Geisinger, 202 N.W.2d 44, 46 (Iowa 1972).

■ II. First to be entertained is respondent's claim to the effect trial court lacked authority to grant dissolution of marriage absent a judicial determination as to compliance with statutory conciliation requirements.

In support thereof Doris argues trial court's failure to file a formal order regarding fulfillment of requisite conciliation procedures is fatal to the decree.

A search of the record fails to reveal any such novel issue was ever raised by respondent in course of trial. Stated otherwise, the instant assigment is here raised for the first time. In light thereof it will not now be considered. See In re Marriage of Collins, 200 N.W.2d 886, 891 (Iowa 1972).

■ III. As aforesaid, respondent also contends there was insufficient evidence upon which to enter a valid dissolution of marriage decree, and in any event requisite corroboration is lacking. We are not so persuaded.

In the first place petitioner testified, in part:

"[W]hen my problems started in regard to the marriage I don't know just how to go about putting a finger right on this. This has just been a deteriorating thing over the years here. Like I say, if my children would have been older 10 years ago this would have happened 10 years ago rather than now.

"And the love in our household has just been a dying thing. It has been a business. It has been something that I got to where I would hate to come home from work. I just didn't care to go home. I would just as leave went somewhere else."

There is other testimony by John to the effect he had, for 24 years, "made every effort possible to make a go of this marriage", but felt it had deteriorated beyond repair.

Furthermore, when the daughter Nancy, a witness for petitioner, was asked whether there existed any reasonable likelihood the marriage could be saved she replied, "No, your Honor, I don't see any hope."

The foregoing serves to effectively refute respondent's insufficiency of evidence and lack of essential corroboration claim. See The Code 1971, Sections 598.10, 598.-17; In re Marriage of Boyd, 200 N.W.2d 845, 852–853 (Iowa 1972).

■ IV. Another claim here voiced by Doris is, in essence, she was erroneously denied support as a mentally ill spouse. Supportively invoked is this portion of Code § 598.17, which provides: "No marriage dissolution granted due to the mental illness of one of the spouses shall relieve the other spouse of any obligation imposed by law as a result of the marriage for the support of the mentally ill spouse, and the court may make an order for such support."

It is to us apparent the foregoing contention is devoid of merit.

Significantly, dissolution of this marriage was not sought or granted due to respondent's mental illness.

Next, an examination of the record discloses nothing more than that Doris suffered a deep depression, probably because of her marriage problems, for which she was apparently under outpatient care with some medication.

In the absence of further supportive testimony there is no basis upon which to now hold respondent's condition at time of trial qualified as mental illness.

V. The problems next to be resolved pertain to property allocation and alimony.

■ At the threshold it should be noted that although these elements may be closely related they are distinguishable and have differing purposes. See In re Marriage of Cook, 205 N.W.2d 682, 684 (Iowa 1973); In re Marriage of Campbell, 204 N.W.2d 638, 639 (Iowa 1973); Geisinger v. Geisinger, 202 N.W.2d 44 at 45–46; Schantz v. Schantz, 163 N.W.2d 398, 405 (Iowa 1968).

The Code 1971, Section 598.21 provides the basis upon which alimony and property rights are determinable. In material part it provides: "When a dissolution of marriage is decreed, the court may make such order in relation to the children, property, parties, and the maintenance of the parties as shall be justified."

■ Manifestly the matters to which § 598.21 alludes can only be resolved on an ad hoc basis by a fair consideration of all relevant factors. See In re Marriage of Romig, 207 N.W.2d 780, 783 (Iowa 1973); In re Marriage of Smith, 207 N.W.2d 548, 551 (Iowa 1973); In re Marriage of Carney, 206 N.W.2d 107, 109 (Iowa 1973); Schantz v. Schantz, *supra*. Thus further reference to the record is essential.

It reveals the parties hereto, during their marriage, acquired property having a total net value of $22,000 at trial time.

Except as hereafter set forth petitioner was awarded most of these assets, some income producing, subject to debts of $1100 to be paid by him. In brief, property allocated to John had a total net value of at least $20,000.

Furthermore, at time of trial John was regularly employed, his take-home pay being about $10,434 per annum, or a monthly net income of at least $869.

On the other hand respondent, in need of medical care with means of self-support limited to about $58 each week, was awarded $7000 as property allocation, payable in installments; limited occupancy of the home; furnishings therein valued at $900; and approximately $100 each month as alimony payable only until about January 10, 1975.

■ Despite respondent's argument to the contrary neither *Boyd* nor *Schantz*, both cited above, mandate an equal allocation of property in all dissolution of marriage cases. See In re Marriage of Romig, 207 N.W.2d at 783, and citations. Although minimal we find no basis upon which to hold the property division effected by trial court is such as to constitute an abuse of discretion.

■ It is to us evident, however, the aforesaid alimony award is inadequate thus inequitable under existing circumstances.

In effect, Doris was granted an amount equal to about one-third of all property acquired during this 24 year marriage. And the restricted alimony allowed her totals no more than $3000 which is patently unjust.

Therefore, on remand of this case the instantly involved decree shall be so modified and corrected as to effectively order and require petitioner to pay alimony to respondent in the sum of $175 each month commencing as of September 26, 1972, such payments to continue until the death

of either party hereto unless respondent shall sooner remarry.

All other provisions of trial court's decree, including the order clarifying same, stand affirmed.

Costs on this appeal are taxed to petitioner.

Affirmed in part, reversed in part and remanded.