FOODS, INC., d/b/a Dahl's Food Stores, Appellee,

v.

Tom LEFFLER et al., Appellants.

No. 2–56773.

Supreme Court of Iowa.

April 14, 1976.

Robert C. Oberbillig and Robert J. Noun, Des Moines, for appellants Leffler, Valadez, Garcia, Price, Geofreddi and Negrete.

Gordon E. Allen, Des Moines, for all other appellants.

Dickinson, Throckmorton, Parker, Mannheimer & Raife by Paul R. Tyler, Des Moines, for appellee.

REES, Justice.

This appeal had its genesis in a class action brought by plaintiff, Foods, Inc., to enjoin the defendant members of the class from conducting certain activities at or near the supermarket facilities of plaintiff in Polk County. At the time of the commencement of the action, plaintiff operated nine supermarkets in the county. Plaintiff Foods, Inc., is better known as Dahl's Food Stores, and will be referred to hereinafter as "Dahl's". The defendants consist of the members of the Iowa Lettuce and Grape Boycott Committee and the Des Moines Lettuce and Grape Boycott Committee, and all individuals who independently or as a class aid, abet or assist in the objects and purposes of said committees. According to the defendants, the Des Moines Lettuce and Grape Boycott Committee was organized for the purposes of: (1) educating and informing the public as to the working conditions of farm workers in California and the labor dispute involving the United Farm Workers, hereinafter U.F.W., AFL–CIO, the Teamsters Union, and the lettuce and grape growers, and (2) communicating support for the U.F.W. and asking consumers to exert economic pressure on retail supermarkets which do not merchandise lettuce and table grapes bearing the union label.

The record indicates representatives of the Des Moines committee contacted Mr. Arthur Cox, president of Dahl's, with a request that the corporation purchase for resale only table grapes and lettuce bearing the U.F.W. label. The representatives of the committee informed Cox they would cause to have prepared a written agreement between Dahl's and the committee containing such provisions and would present it to Dahl's for execution. Cox rejected the request, or demand, of the committee.

On July 27, 1973, members of the committee began picketing and distributing leaf-

lets at several Dahl's supermarkets. Some of the picketers displayed placards calling on customers not to shop at Dahl's stores. The leaflets distributed urged the public to boycott Dahl's until an agreement was reached whereby Dahl's stores would sell only U.F.W. lettuce and grapes. The leaflets· also contained information regarding the committee's view of the nature of the farm workers' dispute and the goals sought by the committee and the U.F.W.

Mr. Cox testified picketing resumed the following day, and there appears to be no dispute but that some picketing and leafleting also occurred at one or more of the Dahl's stores on August 3, 5, 16 and 17. Certain of the defendants testified that on at least two of such occasions the picketers and leaflet distributors left the premises of the Dahl's stores at the request of Cox.

The record appears to indicate some of defendants' picketing activities took place directly on Dahl's property near the customer entrance/exit doors, and some took place directly adjacent to plaintiff's property on public sidewalks. There is nothing in the record to indicate that the picketing and leafleting was other than generally peaceful and orderly, although Cox testified he saw some defendants standing on Dahl's property in front of customers, making it difficult for the customers to enter or exit the store. Mr. Baker, manager of Dahl's Ingersoll Avenue store, testified that some defendants made it difficult for customers to enter the store and that vehicular traffic was backed up into public thoroughfares because of the defendants' activities. The testimony of the defendants themselves leaves no doubt but that the purpose of the picketing and the leafleting was to exert economic pressure on Dahl's to secure Dahl's agreement to sell only U.F.W. grapes and lettuce. Defendants also emphasized that education of the public to the plight of the farmworkers was another purpose of their picketing and leafleting activities.

Following the filing of the original petition by plaintiff, an order for the issuance of a temporary writ of injunction was entered on August 14, 1973, enjoining defendants from trespassing on the premises of any Dahl's supermarket, and from obstructing, by any manner or means, or interfering with, or preventing the entrance or exit of persons or vehicles to and from the supermarkets, from shouting at, disturbing or annoying persons attempting to enter the premises of any of the supermarkets, and from harassing or intimidating Dahl's employees or customers.

In its petition, plaintiff also prayed that a permanent injunction issue. Defendants· moved to vacate the temporary injunction on August 16, and filed answer on August 20 to plaintiff's petition as amended. Plaintiff's petition, as amended, alleged defendants' activities constituted a willful and unlawful trespass in violation of common law and of chapter 729, The Code, 1973, and further constituted an obstruction of the free use of private property, and the making or excitement of a disturbance in violation of § 744.1, The Code, 1973. Dahl's further asserted the activities of defendants constituted an attempt to force Dahl's to ·enter into an agreement, contract or understanding to. limit the amount or quantity of a commodity sold in Iowa, and an attempt to enter into a contract or conspiracy in restraint of trade or commerce among the several states and an attempt to monopolize, or combine or conspire with others to monopolize, a part of the trade or commerce among the several states. Defendants' motion to vacate the temporary injunction alleged, *inter alia*, that their activities were protected by the First and Fourteenth Amendments to the Constitution of the United States. No such defense, however, was asserted by defendants in their answer, which constituted substantially a general denial by which defendants denied certain allegations of the petition and admitted others.

Trial of the cause began on August 20, 1973. At the close of plaintiff's evidence, defendants moved the court to dismiss Dahl's petition and to quash the previously issued writ of temporary injunction. In their motion to dismiss, defendants asserted

their activities were lawful and constituted conduct protected by the First Amendment to the United States Constitution. The motion also asserted what might with some stretch of the imagination be construed to be a claim by defendants to special protection by virtue of involvement in a "labor dispute." Defendants assert such protection on appeal, but their only reference to labor activity in the motion to dismiss was as follows:

"We would also argue, secondly, that they [defendants] were there for a lawful activity, that is, the promulgation of better working conditions for a labor union in California.

"We would submit that their conduct and their activity was protected by the First Amendment and is protected by the laws of Iowa and that these people in doing what they are doing are attempting to better the working conditions of union members. It might be said that they are not union members, themselves, but the First Amendment does not go to who you are. It goes to what you are saying and the individuals who advocate the end and the better working conditions for these United Farm Workers Labor Union members are exercising those rights.

"We submit that the plaintiff has failed in its burden of proof for a permanent injunction against this protected and preferred First Amendment right and that the protected right of a labor union to picket and leaflet is protected by the First Amendment and the laws of Iowa, and we submit that the petition of the plaintiff should be dismissed."

Trial court overruled defendants' motion to dismiss, and the grounds asserted therein were not thereafter reasserted during the course of the proceedings. The cause was submitted August 22, 1973, and two days later trial court made its findings of fact, reached conclusions of law, and entered its decree granting a permanent writ of injunction. This appeal ensued.

Defendants state the following issues for review:

(1) Trial court erred in finding defendants' activities were not protected by the First and Fourteenth Amendments to the Constitution of the United States and in finding defendants were not involved in a labor dispute.

(2) Trial court erred in failing to differentiate between the various supermarket locations operated by plaintiff.

(3) Trial court erred in finding the public was invited to the premises of the Dahl's stores solely for the purpose of transacting business with Dahl's or as otherwise specifically authorized by the corporation.

(4) Trial court erred in holding that defendants trespassed upon Dahl's premises, defendants' activities constituted an unlawful restraint of trade and commerce, defendants violated § 553.1, The Code, 1973, and their activities were conducted for an unlawful purpose and with an unlawful intent.

(5) Trial court erred when it "broadly enjoined all individuals, including appellants," from orally asking, urging or insisting that persons refuse to purchase any products from Dahl's and from carrying and displaying placards or signs near Dahl's premises.

(6) Trial court erred in finding that engaging in conversations with individuals on streets adjacent to Dahl's premises was a violation of a lawful court order.

(7) Trial court erred when it held that because Dahl's customers were "annoyed" and "disturbed," that sufficient grounds existed for denying to defendants their First Amendment rights.

I. There first arises in this appeal the question as to whether defendants properly raised below their defenses of First and Fourteenth Amendment protection for their activities and special status as participants in a labor dispute. Dahl's urges such defenses, which provide the foundation for a number of defendants' issues stated for review, were never properly raised below and, consequently, may not be considered here. We perceive considerable merit in Dahl's contentions in this regard.

In the decree from which defendants appeal, trial court made the following conclusion of law:

> "The defendants have not raised in their pleadings as a defense that they are a labor organization or involved in a labor dispute or that their activities are protected by the First and Fourteenth Amendments to the United States Constitution, although their counsel has argued these points.

> "The court concludes that defendants' activities are not protected by the First or Fourteenth Amendments to the United States Constitution nor are the defendants a labor organization or involved in a labor dispute."

We read the first portion of trial court's conclusion of law set out above as a holding that the matters of First Amendment protection and involvement in a labor dispute were not properly raised as defenses in this case. Therefore, we must view the latter portion of the court's conclusion set out above as a mere gratuitous observation.

■ We have consistently held questions not presented to and not passed upon by the trial court cannot be raised or reviewed on appeal. *Schnabel v. Display Sign Service, Inc.*, 219 N.W.2d 546, 548 (Iowa 1974); *DeLong v. Scott*, 217 N.W.2d 635, 637 (Iowa 1974). This rules applies equally to constitutional questions which are belatedly urged. *Wolfs v. Challacombe*, 218 N.W.2d 564, 570 (Iowa 1974); *Polson v. Meredith Publishing Company*, 213 N.W.2d 520, 523 (Iowa 1973).

■ The record indicates defendants' answer to plaintiff's petition as amended consisted only of admissions of certain allegations of plaintiff's petition as amended, and denials of specific paragraphs of same. No reference was made in defendants' answer to a defense based upon First Amendment protections or involvement of defendants in a labor dispute. The only intimation of any defense grounded on constitutional rights is embraced in defendants' motion to vacate the temporary injunction, where First Amendment freedoms were concededly asserted, and in the motion to dismiss urged

at the close of plaintiff's evidence at trial. We must conclude the defenses now asserted on appeal were not properly and adequately raised by the motion to vacate the temporary injunction or the motion to dismiss.

■ We are concerned in this appeal with the court's order directing issuance of a permanent writ of injunction against defendants. The temporary injunction which preceded it was in no way dependent upon the later hearing. See 42 Am.Jur.2d Injunctions § 13, page 740. A temporary injunction is a preventive remedy to maintain the status quo of the parties and protect the subject of the litigation. *Kent Products v. Hoegh*, 245 Iowa 205, 214, 61 N.W.2d 711, 716. When a final decree is entered, a temporary injunction is merged or dissolved into it and thereafter the propriety of the order directing the issuance of a temporary injunction or affording temporary relief is generally regarded as academic, or moot. 42 Am.Jur.2d Injunctions § 356, pages 1167–1168.

We do not incline to the view that the defenses to a petition for a permanent writ of injunction may be raised by way of motion to vacate a temporary injunction. The temporary injunction was not the outgrowth of a hearing on the merits. It was independent of and superseded by the trial on the merits of plaintiff's petition and prayer for the issuance of a permanent writ of injunction. Any defense on the merits of the controversy should have been raised in the proceedings in which the merits were considered. Our review of this appeal does not go to the question of the propriety of issuing the temporary injunction, but rather to the final decree and the permanent writ of injunction issued pursuant thereto. The threshold question for determination, therefore, is whether the defenses urged by defendants were properly raised by a motion to dismiss the petition at the close of plaintiff's evidence.

■ Rule 72, Rules of Civil Procedure, provides, *inter alia*, that an answer shall specifically admit or deny each allegation or

paragraph of the petition and must "state any additional facts deemed to show a defense." Rule 101, R.C.P., deals with defenses which must be specially pleaded, and provides:

"Any defense that a contract or writing sued on is void or voidable, or was delivered in escrow, or which alleges any matter in justification, excuse, release or discharge, or which admits the facts of the adverse pleading but seeks to avoid their legal effect, must be specially pleaded."

The foregoing rule enunciates general principles as to what matters may be put in issue by, or provable under, a general denial, and what matters must be specially pleaded as affirmative defenses. We define an affirmative defense as "one resting on facts not necessary to support plaintiffs' case." *Baker v. Beal*, 225 N.W.2d 106, 114 (Iowa 1975); *Henschel v. Hawkeye-Security Insurance Company*, 178 N.W.2d 409, 420 (Iowa 1970).

In this case, Dahl's petition was grounded on allegations of trespass and obstruction of property and on claims of attempts to restrain or monopolize trade or limit the quantity of a commodity sold. Defendants attempt to assert special protection afforded their activities by the First and Fourteenth Amendments of the United States Constitution and by virtue of their claimed participation in a labor dispute. It is readily apparent from the record these defenses rest on facts not necessary to support plaintiff's case. Such defenses, if meritorious in the fact situation there, could have prevailed even if plaintiff succeeded in establishing conclusively by uncontroverted evidence the facts necessary to support its case. That is, the defenses might have succeeded in avoiding the normal consequences of plaintiff's proven facts by invoking protected constitutional rights, as in the First Amendment claim, and specific statutory protection for certain labor activities, as in the claim of involvement in a labor dispute.

As rule 101, R.C.P., *supra*, indicates, matters of affirmative defense must be spe-cially pleaded. A motion is not a pleading. Rule 69, R.C.P.; Rule 109, R.C.P.; *Brekken v. County Board of Review for Story County*, 223 N.W.2d 246, 247 (Iowa 1975). Where an affirmative defense is not properly pleaded, this court will not entertain its assertion on appeal. *McCleeary v. Wirtz*, 222 N.W.2d 409, 416 (Iowa 1974); *In re Marriage of Tucker*, 213 N.W.2d 498, 500 (Iowa 1973). *McCleeary, supra*, involved the affirmative defense of the bar of the statute of limitations, and at page 416 of 222 N.W.2d, we said:

"[W]e have unsuccessfully searched the record in an effort to find any effective trial court pleading of such an affirmative defense. Surely a mere reference to the statute of limitations during oral argument to the court *on some issue or motion* does not so qualify." (Emphasis supplied).

Rule 103, R.C.P., provides, in pertinent part:

"Every defense in bar or abatement, or to the jurisdiction after a general appearance, shall be made in the answer or reply, save as allowed by rule 104."

Rule 104, R.C.P., lists the exceptions to the ordinary requirement that every defense in law or fact to any pleading must be asserted in the pleading responsive thereto, if one is required. None of the exceptions is applicable here.

We are constrained to conclude the mere denials of specific paragraphs of plaintiff's petition were insufficient to raise the affirmative defenses to which reference is made by defendants in this appeal. The motion to dismiss at the close of plaintiff's case was ineffective to raise them. The record does not indicate defendants made any attempt to amend their answer to include or make reference to the defenses now urged.

A similar situation was present in *Nelson v. Leaders*, 258 Iowa 919, 140 N.W.2d 921. That case involved an action to enforce a restrictive covenant in a buy and sell agreement between stockholders in a farm equipment business. Defendant attempted on appeal to argue the covenant was void as

against public policy, but such defense was not pleaded at trial; defendant merely denied pertinent allegations in the petition. He did, however, urge such defense in a motion to dismiss, and subsequently introduced evidence on the matter. Although trial court in *Nelson* considered, and ruled upon, the merits of the claim of unreasonableness, we held defendant was not entitled to urge the covenant's invalidity on appeal due to his failure to plead the issue in conformity with rules 72, 101 and 103, R.C.P.

■ In light of the above considerations, we are impelled to hold defendants may not urge in this appeal the defenses of First Amendment protection and their claim of involvement in a labor dispute, because such defenses were not properly raised below.

II. We must then proceed to a determination as to which of the issues defendants state for review could support a reversal or modification of the court's order without reference to the defenses of protection under the First and Fourteenth Amendments and the claim that defendants were involved in a labor dispute.

In their first issue stated for review, defendants contend trial court erred when it found defendants' activities were not protected by the First and Fourteenth Amendments to the United States Constitution, and that defendants were not involved in a labor dispute. It is clear this contention may not now be raised due to failure to assert it properly below.

The second issue stated for review is whether trial court erred in failing to differentiate between the various supermarket locations operated by Dahl's. Defendants now claim the evidence demonstrated Dahl's Ingersoll Avenue store is located in a multi-business district, the Fleur Drive store is part of a large shopping complex not owned by Dahl's, and not all stores have the same departments or offer the same services. In support of this stated issue, defendants argue the various Dahl's stores have taken on the attributes of the community business block so that First Amend-

ment activities may be enjoined only as authorized by the United States Supreme Court guidelines laid down in *Marsh v. Alabama*, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265, *Amalgamated Food Employees Union Local 590 v. Logan Valley Plaza, Inc.*, 391 U.S. 308, 88 S.Ct. 1601, 20 L.Ed.2d 603, and in *Lloyd Corporation, Ltd. v. Tanner*, 407 U.S. 551, 92 S.Ct. 2219, 33 L.Ed.2d 131. The cited cases provide the criteria for balancing First Amendment rights with private property rights where the property in question has taken on public aspects or been demonstrably dedicated to public use. Defendants cannot now avail themselves of the authority of such cases, having failed to properly raise a First Amendment claim below. Accordingly, we deem it unnecessary to reach the merits of this issue.

III. In the third issue stated for review, defendants urge trial court erred in finding the public was invited to Dahl's premises solely for the purpose of transacting business at the supermarkets, or as otherwise specifically authorized by the corporation. In support of this contention, defendants point to evidence in the record indicating the location of U.S. mail substations in Dahl's supermarkets and of provisions for accepting payments for utility bills at Dahl's stores. Defendants argue this indicates a sufficient dedication of property to public use so that their First Amendment activities may not be enjoined. Since First Amendment protections were not properly raised below, we again are not inclined to consider them here.

IV. The fourth issue stated for review by defendants might be characterized as an omnibus statement. Defendants here contend trial court erred as a matter of law in holding defendants trespassed on Dahl's property; that their activities constituted an unlawful restraint of trade and commerce; that their activities violated § 553.1, The Code, 1973; and that their activities were conducted with an unlawful intent and for an unlawful purpose.

We believe it unnecessary to consider all of these assertions as we conclude the record reveals a violation by defendants of

Code section 553.1 sufficient to support the injunction substantially as it was ordered by the decree of the trial court.

Section 553.1, The Code, 1973, provides:

"553.1 Pools and trusts. Any corporation organized under the laws of this or any other state or country for transacting or conducting any kind of business in this state, or any partnership, association, or individual, creating, entering into, or becoming a member of, or a party to, any pool, trust, agreement, contract, combination, confederation, or understanding with any other corporation, partnership, association, or individual, to regulate or fix the price of any article of merchandise or commodity, or to fix or limit the amount or quantity of any article, commodity, or merchandise to be manufactured, mined, produced, or sold in this state, shall be guilty of a conspiracy."

Eliminating some of the conjunctives in the above cited statute, we can discern the statute provides, "[a]ny * * * individual * * * entering into, or becoming a member of, or a party to, any * * * agreement * * * or understanding with any other * * * association, or individual * * * to fix or limit the amount or quantity of any article, commodity, or merchandise to be * * * sold in this state, shall be guilty of a conspiracy."

The testimony of defendants themselves leaves no doubt but that one of the major purposes of the picketing and distributing of leaflets at Dahl's was to induce the stores to agree with the "boycott committee" to sell only U.F.W. grapes and lettuce to the exclusion of others. Defendant Ryan testified Dahl's was informed its stores would be picketed if an agreement was not reached to limit sales to "Black Eagle" grapes and lettuce. He also testified the purpose of the picketing was to "try to convince Mr. Cox and the Dahl's corporation that it would be in their economic interest * * * to buy only Black Eagle products." Defendant Valadez agreed the purpose of the picketing was to exact an agreement from Dahl's to sell only U.F.W. lettuce and grapes. Defendant Leffler an-

swered affirmatively to the question whether his purpose in picketing Dahl's was to reduce commerce or trade at the Dahl's stores.

■ We believe the evidence adduced at trial demonstrates as a matter of law a violation of § 553.1, The Code. Dahl's was entitled to injunctive relief from the attempts of the defendants to induce the corporation to enter into an unlawful agreement to limit the amount and quantity of lettuce and grapes sold in this state.

Defendants advance three arguments in support of their contention trial court erred as a matter of law in finding their activities a violation of section 553.1. First, they contend it was not the intent of the legislature to prohibit the exercise of First Amendment rights. As we have commented above, we will not entertain in this appeal the claim of the protection of the First Amendment belatedly urged. Accordingly, we deem it unnecessary to consider this contention of defendants further.

Secondly, defendants claim their activities are specifically exempt from the strictures of § 553.1 by the application of § 553.-11, The Code, 1973. The latter section provides:

"The labor of a human being either mental or physical is not a commodity or article of commerce and it shall not be unlawful for men and women to organize themselves into or carry on unions for the purpose, by lawful means, of lessening the hours of labor or increasing the wages, or bettering the condition of the members of such organizations, or lawfully carrying out their legitimate purposes."

Here again, since defendants did not properly raise in the trial court any such defense of statutory exemption, we decline to consider it in this appeal.

■ Finally, defendants argue that to enjoin their activities as violative of § 553.1, The Code, is to encroach on an area preempted by federal authority. Since a preemption claim questions the very jurisdiction of our state courts to grant relief un-

der our state law, we are inclined to the view a party does not waive the issue by failing to assert it below.

Defendants present their pre-emption claim in a rather unusual fashion. In one division of their brief and argument, they strenuously argue that the instant case involves no question of application of federal law, saying:

"[T]he United Farm Workers Union, AFL–CIO, is simply not recognized nor covered by any of the Federal regulatory labor statutes * * *. Indeed, agricultural workers have been expressly exempted from the coverage of both the National Labor Relations Act and the Taft-Hartley Act, 29 U.S.C. § 152(3) (1970). And even if farmworkers organized by the United Farm Workers Union were included in such legislation, none of the Appellants or other members of the Committee are members of that union, as hereinbefore noted."

Thus, defendants argue, they may not invoke the protections, nor be subject to the prohibitions, of federal labor statutes.

Later in their brief, however, and under the heading of the argument we now consider, defendants claim trial court's action was pre-empted by federal law. We cannot look favorably upon these inconsistent and mutually exclusive assertions; nonetheless, we are convinced by defendants' first assertion that no pre-emption question exists. See also *United Farm Workers Organizing Committee v. Superior Court*, 4 Cal.3d 556, 94 Cal.Rptr. 263, 483 P.2d 1215.

V. In the fifth and sixth issues stated for review by defendants, they assert trial court erred to the extent that its order enjoined activities conducted *near* Dahl's premises, which presumably would include adjacent sidewalks, streets and other public areas.

We have hereinabove held that defendants' activities constituted a violation of § 553.1, The Code. There is no merit in defendants' contention that a state's power to enjoin unlawful activity in restraint of

trade is limited to prohibiting the activity only on the premises of the complaining party. See, *e. g.*, the oft-cited case of *Giboney v. Empire Storage and Ice Company*, 336 U.S. 490, 69 S.Ct. 684, 93 L.Ed. 834. We therefore hold there is no merit in defendants' contention in this regard.

VI. In their final issue stated for review, defendants assert trial court erred when it found that because Dahl's customers were "annoyed" and "disturbed" that this was a reason for denying to appellants their First Amendment rights.

In paragraph 11 of its findings of fact, trial court found:

"Some of plaintiff's invitees have been disturbed and annoyed by one or more of the defendants while such invitees were attempting to enter plaintiff's food stores and other of plaintiff's invitees have refused to patronize plaintiff's stores because of the activities of one or more defendants."

Trial court's order directed the issuance of a writ of injunction restraining defendants from "shouting at, disturbing and annoying persons attempting to enter [Dahl's premises]."

The contention of defendants in their final issue so stated for review appears to be in two parts. First, they claim the finding of disturbance of and annoyance to Dahl's customers will not support the enjoining of defendants' activities. Second, they attack as impermissibly vague the portion of trial court's order enjoining them from disturbing and annoying persons attempting to enter Dahl's stores.

The first claim, even if meritorious, is of no benefit to defendants in light of our holding above that the violation of Code section 553.1 is sufficient in itself to support the injunction.

We do, however, perceive merit in the second contention, and believe the court's decree and the writ of injunction issued pursuant thereto must be modified.

This court is possessed of authority to modify portions of a decree of injunction. See, *e. g., Watson v. Chapman*, 244 Iowa 56,

55 N.W.2d 555. Where appropriate, we have nullified portions of such decrees. See *Douglass v. Iowa City*, 218 N.W.2d 908 (Iowa 1974).

 Defendants claim the words "disturbing" and "annoying" are too imprecise to give them notice of what manner of conduct is proscribed. With this we agree. A decree is susceptible of interpretation on the same basis as other written instruments. *Dairyland, Inc. v. Jenison*, 207 N.W.2d 753, 754 (Iowa 1973). The problem which confronts us in connection with the contested portion of the decree is that it defies precise interpretation. Webster's Third New International Dictionary (unabridged) devotes approximately three column inches to the definition of "disturb" and even more to the definition of "annoy." The dictionary sets out no fewer than 25 examples of nuances in the use of the word "disturb," and informs us, *inter alia*, that to "annoy" is to provoke, vex, irk, bother or worry, et cetera.

We have noted the word "annoying" does not necessarily carry with it any connotation of intentional action. See *State v. Williams*, 238 N.W.2d 302 (Iowa 1976). The same can be said of the word "disturb." We perceive a danger that a person of common intelligence would be required to surmise or conjecture at what conduct is or is not proscribed by this portion of the decree, and the writ of injunction issued pursuant thereto. We note the United States Supreme Court has invalidated as vague and overbroad an ordinance which made it a crime for "three or more persons to assemble * * * on any of the sidewalks * * * and there conduct themselves in a manner annoying to persons passing by * * *." *Coates v. City of Cincinnati*, 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214.

 We have said an injunctive decree should ordinarily conform to the requirements of the particular case and not go beyond such requirements. *Douglass v. Iowa City, supra*, 218 N.W.2d at 913, citing 42 Am.Jur.2d Injunctions § 297, pp. 1097–1098. Defendants do not assert the invalidity of those portions of the court's decree which restrain them from:

"(b) By any manner or means obstructing, interfering with, or preventing the entrance or exit of persons or vehicles to and from the above described premises of plaintiff.

" * * *

"(d) Harassing, intimidating or otherwise interfering in any way with plaintiff's employees or customers."

We believe the restrictions above set out, and the conduct enjoined thereby, along with the other provisions of the decree, are sufficient to protect plaintiff's interest in this matter.

 Accordingly, we conclude the challenged portion of the decree goes beyond the requirements of this case, and we direct that the reference to "disturbing" and "annoying" be stricken from the decree and the writ of injunction issued pursuant thereto.

With the foregoing modification of the decree and the writ of injunction, we otherwise affirm the trial court.

MODIFIED, AND AS MODIFIED, AFFIRMED.

MOORE, C. J., concurs.

REYNOLDSON, LeGRAND and HARRIS, JJ., concur specially.

McCORMICK, MASON, RAWLINGS and UHLENHOPP, JJ., dissent.

REYNOLDSON, Justice (concurring specially).

While defendants' constitutional issue was not properly raised in trial court, I believe it was tried by consent. This would not, in my opinion, change the result reached in the opinion filed by Justice Rees. *Hudgens v. National Labor Relations Board*, —— U.S. ——, 96 S.Ct. 1029, 47 L.Ed.2d 196 (1976). I therefore concur specially.

LeGRAND and HARRIS, JJ., join this special concurrence.

McCORMICK, Justice (dissenting in part).

I would sustain the injunction only insofar as it bars defendants from picketing and handbilling on plaintiff's private property and adjacent shopping center property and from interference with customer ingress or egress.

I. *Applicability of § 553.1, The Code.* The majority opinion holds the injunction was justified because defendants' activities violated § 553.1, The Code. I do not believe § 553.1 was violated by defendants.

By its terms that provision makes it a crime to combine or agree *"to regulate or fix the price * * * or to fix or limit the amount or quantity* of any article, commodity, or merchandise to be * * * sold in this state"*. (Italics added). No claim is made that the defendants were attempting to fix prices. Instead the majority opinion finds defendants were attempting to induce plaintiff "to enter an unlawful agreement to limit the amount and quantity of lettuce and grapes sold in this state." The record does not support this finding.

Rather than attempting to induce plaintiff to enter an agreement to limit the amount of lettuce and grapes sold in Iowa, defendants sought to persuade plaintiff to agree to sell only a particular brand of lettuce and grapes. The majority finding is premised upon the unwarranted assumption that an effort to limit the *brand* of lettuce and grapes sold by plaintiff is equivalent to a limitation on the *amount* of lettuce and grapes which could be sold. No attempt was made by defendants to limit the quantity of lettuce and grapes sold in Iowa. Instead their attempt was to assure that the quantities sold by plaintiff were Black Eagle products.

As a criminal statute, § 553.1 must be strictly construed. *Rohlf v. Kasemeier,* 140 Iowa 182, 185, 118 N.W. 276, 277 (1908). An agreement by a retailer to sell a particular brand of a commodity does not constitute a limitation on the amount of the commodity which can be sold by that retailer or its competitors in the state. Such an agreement does not violate § 553.1. *Reeves v.*

*Cooperative Society,* 160 Iowa 194, 201, 140 N.W. 844, 847 (1913) ("a mere selling agency is not a monopoly"); see *Tucson Federal Sav. & L. Ass'n v. Aetna Inv. Corp.,* 74 Ariz. 163, 245 P.2d 423 (1952).

The injunction in this case cannot be upheld on the ground of violation by defendants of § 553.1.

II. *Applicability of the Sherman Act.* The trial court held defendants' activities constituted an unlawful restraint of trade. The parties agree this holding was in response to plaintiff's allegation that defendants' activities violated the Sherman Anti-Trust Act, 15 U.S.C. § 1 et seq. The majority opinion does not reach this ground because its holding is premised on the asserted violation of Iowa Code § 553.1, but I would reach the Sherman Act ground because I do not believe § 553.1 was violated.

A state court has no jurisdiction of alleged Sherman Act violations. Jurisdiction to enforce the Sherman Act lies exclusively in the federal courts. 15 U.S.C. § 4; *General Investment Co. v. Lake Shore & M. S. R. Co.,* 260 U.S. 261, 287, 43 S.Ct. 106, 117, 67 L.Ed. 244, 260 (1922) ("This suit was brought in a state court, and in so far as its purpose was to enjoin a violation of the Sherman Anti-Trust Act that court could not entertain it.").

The trial court lacked jurisdiction of the Sherman Act issue. The injunction cannot be sustained on that ground.

. I do not suggest a Sherman Act violation could have been found if the court did have jurisdiction. See *New Negro Alliance v. Sanitary Grocery Co.,* 303 U.S. 552, 58 S.Ct. 703, 82 L.Ed. 1012 (1938).

III. *Applicability of the trespass law.* Plaintiff alleged and the trial court held that defendants' activities constituted a trespass under Iowa law. We interpreted the criminal trespass statute, § 729.1, The Code, in *State v. Williams,* 238 N.W.2d 302 (Iowa 1976). In that case a majority of the court held § 729.1 regulates only conduct and not speech, thus distinguishing it from the situation in *Thornhill v. Alabama,* 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940).

In *Thornhill* the Supreme Court held unconstitutional on First Amendment grounds a statute which prohibited loitering without just cause or excuse about a place of business with the intent to influence or induce others not to deal with that business. Under *Williams* the Iowa trespass statute purports to regulate only the non-speech elements of conduct.

The record contains evidence that on at least one occasion traffic was backed up at the entrance to plaintiff's Ingersoll store because drivers were stopping at the entrance to the premises to accept leaflets and talk with defendants. Similar activity near the door made it "inconvenient" for customers to enter the store—"There wasn't a direct line that people could walk to the door".

At most this activity constituted "unduly interfering with the lawful use of the property by others", contrary to § 729.1(2)(c), insofar as it showed an unreasonable interference with customer ingress. To that extent, and to that extent only, justification existed for a limited injunction under the trespass statute.

This record is devoid of any evidence of disturbance, intimidation, harassment, violence, or disorder of any kind. Except for evidence of interference with ingress, no evidence was presented to show defendants' conduct infringed the trespass statute in any way. Expressed "annoyance" by plaintiff's employees and a few customers was caused by defendants' message, not by their conduct, except as it interfered with pedestrian and vehicular ingress. Furthermore, as held in the majority opinion, the injunction was invalid in its effort to ban such "annoyance".

I would hold the injunction valid on the trespass theory only insofar as it barred defendants from interference with customer ingress or egress.

IV. *The First Amendment defense.* While I agree with Justice Rees that defendants did not plead their First Amendment defense as required by the rules of civil procedure, I also agree with the special concurrence that the issue was tried by consent and is before us for review.

Defendants included the issue in the statement of issues presented for review in their appellate brief. See rule 344(a)(2), Rules of Civil Procedure. Their statement of the issue is sufficient to merit its consideration in this appeal if it was presented to and ruled on by the trial court. *Schnabel v. Display Sign Service, Inc.*, 219 N.W.2d 546, 548 (Iowa 1974); see 2 Vestal & Willson, Iowa Practice, § 59.09 at 436; Blackburn, The Appellate Rules Amendments—Suggested Forms and Timetables, 22 Drake L.Rev. 223, 237–238 (1973). *Nelson v. Leaders*, 258 Iowa 919, 140 N.W.2d 921 (1966), which might be read as supporting a contrary holding, was decided under a rule of appellate procedure which has been repealed.

An issue is presented to the trial court when it is tried by consent. In this case, apart from defendants' motions based on the constitutional defense, much of the evidence bore on the constitutional question. Plaintiff introduced evidence that some defendants consulted the Chicago office of the AFL–CIO regarding their picketing and handbilling rights. They received copies of various court decisions delineating such rights, including *Amalgamated Food Employees Union Local 590 v. Logan Valley Plaza, Inc.*, 391 U.S. 308, 88 S.Ct. 1601, 20 L.Ed.2d 603 (1968), upon which they relied.

Much of the defendants' evidence, received without objection, sought to establish public dedication of plaintiff's premises. Moreover, much of plaintiff's evidence sought to establish the contrary and to show, in addition, the picketing and handbilling could have been as well limited to the public sidewalk or parking.

On cross-examination of a defense witness concerning picketing and handbilling in the parking lot near plaintiff's Fleur Drive store, the following occurred:

Q. Have you asked anyone about permission to pass out leaflets at that location? A. No. I just figured that as citizens we have this right as guaranteed in the First Amendment.

Q. Do you feel that you have the right to pass out leaflets and picket in the thoroughfare in front of the Dahl's store there? A. Very definitely, because, as I say, what I read is that no city, state or local ordinance can overrule the Supreme Court ruling that says we have a right to demonstrate in a peaceful manner.

Q. In a street? A. I am talking about a sidewalk. Excuse me. I am talking about the door.

Q. Right in front of the door of the Dahl's store there? A. Yes, and sidewalks, of course.

Although the pretrial motion to dissolve the preliminary injunction and the motion during trial to dismiss the action did not constitute pleadings of the First Amendment issue, they alerted plaintiff and the trial court to defendants' First Amendment theory. When the evidence at trial is examined in this light, it is obvious the parties proceeded without objection to try the First Amendment issue. Indeed, a fair reading of the record indicates all other issues were subsidiary. Since the First Amendment issue was tried by consent, it is rightfully in the case. *Peters v. Peters*, 214 N.W.2d 151, 155 (Iowa 1974).

Furthermore, the trial court ruled on the issue. I do not find any trial court holding that the constitutional issue was not in the case, and I would not characterize the trial court's ruling on the merits of the constitutional defense as gratuitous. The trial court obviously recognized the issue was presented by the record. It was what the trial was largely about. No one claimed the constitutional issue was not in the case until the appellee's brief was filed in this court.

The issue having been tried by consent, and the trial court having ruled on it, defendants were entitled to predicate error on the trial court's ruling in this court. They ought not to be barred from doing so for failing to anticipate that plaintiff would, in resisting this issue here, claim for the first time that it was not in the case.

Moreover, contrary to the view expressed in the special concurrence, I believe resolution of the First Amendment issue does affect the result.

It affects the result because defendants had and still have a viable right to engage in First Amendment activities on public property adjacent to plaintiff's stores. Unlike the majority, I do not believe that right is barred by state anti-trust law, Code § 553.1. See Division I, *supra*. Nor is it barred by *Hudgens v. National Labor Relations Board*, —— U.S. ——, 96 S.Ct. 1029, 47 L.Ed.2d 196 (1976). In *Hudgens* the Supreme Court overruled *Amalgamated Food Employees Union Local 590 v. Logan Valley, Inc., supra*, which had authorized First Amendment activities in privately-owned shopping centers in certain circumstances. The overruling of *Logan Valley* does not affect the right to engage in First Amendment activities on public property.

On First Amendment grounds, the injunction cannot validly bar defendants altogether from picketing and handbilling on public property adjacent to plaintiff's stores. Thus, I would sustain only those parts of the injunction which bar defendants from picketing and handbilling on plaintiff's private property and adjacent shopping center property and from interference with customer ingress or egress.

MASON, RAWLINGS and UHLEN-HOPP, JJ., join this dissent.