AUDREY J. LESSENGER, appellant, v. RALPH U. LESSENGER, appellee.

No. 51815.

(Reported in 138 N.W.2d 58)

Nᴏᴠᴇᴍʙᴇʀ 16, 1965.

Bailey C. Webber, of Ottumwa, for appellant.

Bookin & Moreland, of Ottumwa, for appellee.

Mᴏᴏʀᴇ, J.—Plaintiff prayed for and was awarded a decree of divorce but on her appeal complains of the amounts allowed as lump sum alimony or property division and for child support. No attack is made on the provisions of the decree granting her a divorce and custody of the parties' six-year-old daughter. Defendant has not cross-appealed.

Section 598.14, Code, 1962, provides: "Alimony—custody of children—changes. When a divorce is decreed, the court may

make such order in relation to the children, property, parties, and the maintenance of the parties as shall be right. * * *."

We have frequently stated equitable property division and allowance of child support in divorce cases are peculiarly dependent on the facts of each case. Among the matters to be considered are parties' age, health, present capacity to earn, amount of resources owned by each or both parties, contributions of each to the joint accumulations, the children involved, the duration of the marriage, indebtedness of each or both, conduct of the guilty party, and other facts which assist the court in reaching a just and equitable decision. Rider v. Rider, 251 Iowa 1388, 1390, 105 N.W.2d 508, 510; Weiland v. Weiland, 255 Iowa 477, 480, 122 N.W.2d 837, 839, 1 A. L. R.3d 377; Pfab v. Pfab, 257 Iowa 303, 305, 132 N.W.2d 483, 484; Arnold v. Arnold, 257 Iowa 429, 440, 133 N.W.2d 53, 60.

Plaintiff and defendant were married March 23, 1952. Their daughter, Margaret Ann, was born December 18, 1958. She lived with both parents in the family farm home in Jefferson County until July 1, 1964, when the parties ceased living together.

At the time of the marriage plaintiff owned a 1948 Studebaker car, household goods, bonds valued at approximately $200 and had $1000 in cash. Defendant then owned a 400-acre Jefferson County farm purchased for $30,000 in 1947. It was mortgaged for $18,000. He was then in the electrical contracting business which he estimated to be worth $10,000 to $15,000.

When the parties moved to defendant's farm January 2, 1953, it was in poor condition. It was not fenced and had only two usable buildings, also two 1000- and four 1500-bushel metal bins. Thereafter they secured a $17,000 F.H.A. loan. The floors of the dwelling were covered, a bathroom installed and it was modernized. They put in complete water and gas heating systems in the house and buildings. Old fencerows were bulldozed, ditches moved and 100 acres cleared. Productivity was trebled by use of fertilizer and proper management. A new cattle barn was built and another remodeled. A farrowing or pig parlor 32 by 64 feet and two new octagon farrowing houses were constructed. A large barn was remodeled. Two new ponds were built and an apple orchard planted. New farm machinery was

purchased during their operation of the farm. Many new appliances and furnishings were purchased for the home.

Plaintiff did all kinds of work including running the tractor, building fence and caring for the livestock until 1961 when she began selling Avon products. She used the income to feed and partially clothe the family and pay other household expenses.

Plaintiff's income or earning ability as an Avon saleswoman is not disclosed by the record. In June 1964 she cashed bonus bonds from Avon and paid $297 on a new Ford which defendant had purchased. Her capacity to earn is important when the question of child support is considered.

Defendant's earning capacity is likewise of vital importance but is not shown with any certainty. He was very evasive when asked about his earnings away from the farm as an electrician and insurance salesman.

On trial November 24-25, 1964, defendant testified he had 128 acres in corn but did not know the yield, whether it was stored or delivered and professed to have no idea whether he would get $5000 or $500 for it.

Plaintiff testified defendant reported he had an offer of $125,000 for the farm. This he denied. Her mother testified defendant told her he had a $150,000 offer. This he did not directly deny. Plaintiff estimated the farm machinery to be worth $30,000. Defendant offered evidence it was worth $7826.

Defendant testified: "I have no idea what the farm could sell for, but I have never had an offer of $125,000." Over the objection it was hearsay, defendant testified the assessor told him he thought its assessed or market value was $55,293.78.

During the marriage the house in Wapello of plaintiff's father was purchased in plaintiff's name. The details are not shown. Some improvements were made but like many other important facts the extent and value of the property at the time of trial remain a dark secret.

After the record was closed and counsel had completed their arguments the trial court's remarks included:

"I don't have any very reliable evidence as to what the value of the farm is. I have pretty good evidence as to what the indebt-

edness is, but don't have any idea as to what the value of the farm is. There has been really no competent evidence introduced at all on the value of the farm, all been hearsay testimony. The defendant refused to express an opinion or judgment as to what the farm is worth. The plaintiff hasn't claimed to have judgment as to what the farm is worth. She claims to have some opinion given her without any showing as to what the value of the farm is. * * * I wouldn't allow her half interest in any event. If I gave her an interest in the farm it would be a third subject to all indebtedness and if you want that that way why I will make it that way. * * * You have given me no guide on which I can determine what I am allowing her in the way of value. All I could do is fix a lump sum and render judgment for it, or else give her a third interest in the property. I have no way of knowing what I am giving her. * * * It's not my fault you haven't given me a guide on which I could determine the value of the property. Well, I will file a written opinion in the case. I don't know what I will do yet."

The findings and conclusions filed later by the trial court again expressed the same thoughts but decided the issues and directed preparation of a decree accordingly.

Plaintiff then filed a motion to reopen or in the alternative grant a new trial. She claimed surprise because of defendant's denials and evasiveness and offered to prove farm value and defendant's income. The trial court concluded she had not used due diligence and failed to show she could produce evidence which would change the result. Our holding, infra, makes a review of this ruling unnecessary.

The decree entered December 29, 1964, made the court's findings and conclusions a part thereof by reference. Plaintiff was granted care, custody and control of Margaret Ann with the usual visitation rights to defendant. Defendant was ordered to pay $50 per month child support. Plaintiff was given the household goods and furnishings in the farm home, subject to the existing indebtedness. She was given the 1964 Ford registered in her name but subject to the unpaid balance owing on it. Their equity was of little, if any, value. She was granted $6000 as lump sum alimony and the right to live in the farm home until it was paid.

Defendant was awarded the farm subject to the existing mortgages and payment of the lump sum alimony. He was also given all other personal property except that specifically granted to plaintiff. Costs, including $300 as attorney fees for plaintiff's attorney, were taxed against defendant.

The decree also ordered plaintiff to protect and save defendant harmless from further liability to any other person for care, support, education or medical expense of Margaret Ann in consideration of the child support payments. Plaintiff-appellant's third proposition assigned as error attacks this provision. Defendant-appellee points out he is willing to provide, within his means, any emergency expenses for his daughter and states he has no objection to modification of the decree in this regard. We hold the decree should be so modified.

We have carefully read and searched the record. We agree with the trial court's statements and observations made after the close of the evidence. The evidence is inadequate as to the essentials to be considered in determining what is "right" (section 598.14). We are convinced the questions of child support and property division or lump sum alimony cannot be properly adjudicated under the record before us. As argued by plaintiff's present counsel, who did not represent her at the trial, equity can only be done by remanding this controversy to the trial court for reopening and further evidence on these two vital issues.

The general rule is where an equity case is not in a condition for a final decree, none will be made by this court, but the case will be remanded. Byington v. Bookwalter, 7 (Clarke) Iowa 512, 74 Am. Dec. 279; Webster County v. Taylor, 19 Iowa 117; Jones v. Dunkelberg (Iowa), 260 N.W. 717.

Volume 5 Am. Jur.2d, Appeal and Error, section 962, page 389, states: "If, because of the condition of the record, the court on appeal cannot determine what judgment should justly be rendered, it will ordinarily remand the case for further proceedings in the trial court. If the record does not justify entry or direction of a decree, as where the bill or complaint is considered insufficient, or the evidence inadequate, to support a material issue, no final decree is rendered in the appellate court except to the

extent of setting aside the decree in the lower court and requiring further proceedings to be had therein." See also 5B C. J. S., Appeal and Error, section 1836(d).

The decree must be set aside and the cause remanded with directions that the trial court permit a reopening for further evidence on the issues of the amount of child support and a proper property division or lump sum alimony.

The decree is set aside and the cause remanded.—Remanded.

All JUSTICES concur.