CABLEVISION ASSOCIATES VI, a
Limited Partnership, Appellant,

v.

FORT DODGE, IOWA, BOARD OF
REVIEW, Appellee.

No. 87–463.

Supreme Court of Iowa.

May 11, 1988.

Mark R. Schuling of Brick, Seckington, Bowers, Swartz & Gentry, P.C., Des Moines, for appellant.

Maurice C. Breen, City Atty., Fort Dodge, for appellee.

Considered by McGIVERIN, C.J., and LARSON, SCHULTZ, LAVORATO, and ANDREASEN, JJ.

LAVORATO, Justice.

This tax assessment appeal involves the 1985 valuation of property in Fort Dodge owned by Cablevision Associates VI. The assessed value that year, $1,332,221, was much higher than in previous years, and Cablevision filed a protest with the city's board of review. After the board upheld the original assessment, Cablevision appealed to the district court. The court decided that neither the original assessment nor the valuation offered by Cablevision was reliable, and it remanded the case to the city assessor for revaluation and reassessment based on more complete information. The district court never made its own value determination, and the assessor has not taken any new action.

Appealing from the court's remand order, Cablevision now asks us to review the record de novo and determine that the value of its property is $500,000, the figure suggested by Cablevision's expert witness. The city argues that we should remand the case to the district court because the court did not make a determination of value from which an appeal can properly be taken; according to the city, the district court does not have the power to remand a case to the assessor. In the alternative, the city contends we should uphold the original assessment.

We agree that the district court erred by remanding the case to the assessor and that it should instead have made its own determination of value. Nevertheless, we think our scope of review allows us to determine the property's value if the record is adequate. The record before us, however, is fraught with problems that make an accurate valuation impossible, just as the district court found. Accordingly, we reverse the district court's judgment and remand the case for the district court to take additional evidence that will make a reliable valuation by that court possible.

## I. *Facts and Prior Proceedings.*

Cablevision owns property in Fort Dodge that is used for providing cable television services to 7007 customers. The cable system also runs through tax districts outside of the city.

In 1985 the Fort Dodge deputy assessor, Richard Ziems, valued the Cablevision property within the city at $1,332,221. The same property was valued as follows in previous years: $702,000 in 1981; $432,000 in 1982; $353,000 in 1983; and $336,000 in 1984.

Through 1984 Ziems used the "replacement cost minus depreciation" approach to value the property. This "other factors" approach was used because it was not possible to determine the property's actual value using its sale price or the sale prices of comparable properties. *See* Iowa Code § 441.21 (1983) (actual value should be determined by using "sale price" approach; "other factors" approach to be used only when sale price data are insufficient).

Before the 1985 assessment, however, Ziems learned of the sales of two unrelated cable systems. One system, with 511 customers, had sold for $425,000. The other, with 8200 customers, had sold for $110,000,000; Ziems read about this sale in a newspaper article. He testified that the under-valuation of cable systems was, at this time, a concern of assessors throughout Iowa. This concern, combined with his knowledge of the sales, led Ziems to believe he had under-valued the Cablevision property in previous years.

To alleviate this problem in 1985, Ziems used a correlation of three recognized appraisal methods: sale price, income, and replacement cost. *See* Iowa Code § 441.21; H.O. Lee & W.A. LeForestier, *Review and Reduction of Real Property Assessments* §§ 1:04, 1:07, 1:08, at 3–6 (1960) (appraisal methods defined). He discounted the values produced by these methods to correct for inherent uncertainties and then added the reduced values together to produce the final figure, $1,332,221.

Because the 1985 assessment was substantially higher than those of previous years, Cablevision filed a protest with the Fort Dodge board of review, alleging that the assessment was excessive. *See* Iowa Code § 441.37. After the board approved the original assessment Cablevision sought review by the district court. *See id.* at § 441.38.

At trial, *see id.* at § 441.39, the district court heard testimony from Ziems and an expert hired by Cablevision, Robert Winkler. Winkler worked for a consulting firm that specializes in representing clients in assessment appeals. He offered his own valuation of the Cablevision property, $500,000, which he had approximated from figures produced by the income ($453,346) and replacement cost ($658,485) methods.

Under cross examination Winkler admitted he had misstated the 1985 value of Cablevision's assets in a report he had submitted to the city on the company's behalf. The report listed the undepreciated value of the assets to be $611,499, while Winkler's testimony before the court indicated that that value was actually $1,232,150.

The district court refused to adopt either the original assessment or the valuation offered by Cablevision. According to the court, the original assessment was unacceptable because the approach used, a correlation of three appraisal methods, was "contrary to Iowa statutory law." Further, the "sale price" component of this correlation was based on unverified, undetailed data, and all three components contained inaccurate estimations. The court pointed out that these estimations were

made necessary in part by Cablevision's refusal to provide the cost and subscription information requested by the assessor.

The court found Cablevision's valuation to be similarly flawed. Cablevision's expert used the same depreciation and obsolescence figures the assessor had used, though the expert had testified that these figures did not account for the abnormal functional obsolescence of the Cablevision system. Further, the court thought it would be inequitable to rely on the Cablevision valuation because Cablevision had never disclosed accurate information about its assets until after the present protest was commenced, despite repeated requests from the assessor.

The court concluded Cablevision had proven that the city's assessment was excessive. Nevertheless, it remanded the case to the assessor for revaluation and reassessment because the record was insufficient for a new valuation by the court.

Appealing from the remand order before any new action by the assessor, Cablevision now asks us to review the record de novo. It maintains that the city's original assessment is flawed and that its own valuation is supported by the record.

The city contends that because the district court was required by statute to either approve or modify the original assessment, its decision to remand the case to the assessor is not one from which an appeal can properly be taken. Therefore, the city argues, we must remand the case to the district court for a determination of value. In the alternative, the city asserts that the original assessment was correct and that Cablevision neither proved the original assessment to be excessive nor offered a credible valuation of its own.

## II. *The District Court's Remand to the City Assessor.*

■ The first issue we must address is whether the district court's remand of the case to the city assessor was proper. If it was, we can leave the revaluation of Cablevision's property to the assessor. If it was not, we must decide whether the deter-

mination of value should be made here or in the district court.

We hold that the district court's remand of the case to the assessor was not proper. As the city points out, Iowa Code section 441.43 states that

[u]pon trial of any appeal from the action of the board of review fixing the amount of assessment upon any property concerning which complaint is made, the court may *increase, decrease,* or *affirm* the amount of the assessment appealed from.

(Emphasis added.) The clear meaning of this language is that the court must either approve or modify a board's valuation. Remanding the case is simply not an option.

We faced a similar issue in *Richards v. Hardin County Board of Review,* 393 N.W.2d 148 (Iowa 1986). There, the taxpayer presented some evidence that the assessment in question was excessive or inequitable. Because he did not offer the testimony of two disinterested witnesses, however, the taxpayer failed to shift the burden of proof to the board. *See* Iowa Code § 441.21(3) (complainant can shift burden by offering competent evidence by at least two disinterested witnesses). Under these circumstances the district court erroneously concluded that it did not have to make its own determination of value. *Richards,* 393 N.W.2d at 150. Instead, the court simply upheld the board's decision. *Id.*

On appeal we agreed with the taxpayer's description of the district court's role in the trial of assessment cases: the court is *"required* to weigh the evidence in its totality and make an independent determination on the valuation issues." *Id.* (emphasis added). As this description and the language of section 441.43 both suggest, the district court has a duty in all assessment cases to either approve or modify the board's assessment. If the record is insufficient for such a determination, the court should require the presentation of additional evidence. *See Farmers Grain Dealers Ass'n v. Sather,* 267 N.W.2d 58, 61 (Iowa 1978) (in district court appeal, party can properly introduce new evidence to support grounds

raised in the original protest); *cf. Sunset Mobile Home Park v. Parsons,* 324 N.W.2d 452, 454 (Iowa 1982) (in de novo review of small claims case, district court can order presentation of additional evidence if record is inadequate to support a judgment); *Ravreby v. United Airlines, Inc.,* 293 N.W.2d 260, 262 (Iowa 1980); Iowa Code § 631.13(4)(a).

In summary, we hold that the district court here was required under Iowa Code section 441.43 to determine the value of Cablevision's property.

Since the district court's remand of the case to the assessor was improper, we must decide whether we can resolve the valuation issues now. In *Richards,* as in this case, we were faced with the district court's erroneous failure to address these issues. We said it was unnecessary to "remand the matter to the district court for additional findings as the [taxpayer] has requested. We are empowered to decide the ultimate issues ... de novo on appeal." *Richards,* 393 N.W.2d at 150; *see also Equitable Life Ins. Co. v. Board of Review,* 281 N.W.2d 821, 827 (Iowa 1979).

■ Here, however, we are also faced with a record that the district court found to be inadequate for a value determination. When the record in an equity case is not in a condition that would allow a final decree, the general rule is to remand the case to the district court for additional evidence. *Lessenger v. Lessenger,* 258 Iowa 170, 175, 138 N.W.2d 58, 61 (1965) (record in divorce case inadequate for supreme court determination of alimony, property division, and child support; case remanded to district court for further evidence); *accord* 5 Am. Jur.2d *Appeal & Error* § 962, at 389 (1962); 5B C.J.S. *Appeal & Error* § 1836(d), at 235–36 (1958).

We must, therefore, examine the record to determine whether a valuation is now possible.

### III. *Adequacy of the Record and Validity of the Assessor's Method.*

■ Each party claims the record is adequate to support its valuation of the Cablevision property. In addition, Cablevision argues the district court was correct in finding that the assessor's three-method correlation was improper as a matter of law.[1]

Based on a de novo review of the record, we find that it is not adequate for an accurate valuation at this time. Hence, neither valuation offered by the parties can be considered reliable.

The district court pointed out several problems with the record that threw the accuracy of the valuations into doubt. Though we are not bound by these findings, we give them weight. Iowa R.App.P. 14(f)(7).

We think the following examples cited by the district court amply illustrate the inadequacy of the record. (1) The information on comparable sales used by Ziems contained no detail other than the sale price and the number of customers; without more, it is impossible to say just how "comparable" these sales were. (2) The replacement cost of Cablevision's underground wire was not available to Ziems at the time he made his assessment, nor did he have accurate information on the number of subscribers paying for extra channel services and what income they generated; both wire and subscription figures were simply estimated, and the record seems to contain only these estimations. (3) It is still unclear whether the record contains data for Fort Dodge that are segregated from data for other communities; such segregated information was definitely not available to the assessor. (4) The depreciation figures in the record do not appear to account for the abnormal functional obsolescence of Cablevision's equipment.

---

1. The city also asserts that Cablevision failed to satisfy its burden of proof because it did not offer evidence from two disinterested witnesses. We recently rejected this argument in *Ross v. Board of Review,* 417 N.W.2d 462 (Iowa 1988). Iowa Code § 441.21(3) requires evidence from two disinterested witnesses only to *shift* the burden of proof to the opposing party. "[F]ailing to shift the burden of proof is not equivalent to failing to satisfy the burden of proof." *Ross,* 417 N.W.2d at 465.

In short, unless problems such as these are eliminated by supplementing the record, a reliable valuation cannot be made. Accordingly, we must remand this case to the district court for additional evidence that will make a reliable valuation by that court possible. *See Lessenger,* 258 Iowa at 175, 138 N.W.2d at 61.

Finally, we must correct the district court's determination that the assessor's three-method correlation was invalid as a matter of law. The court said that it was "contrary to Iowa statutory law" for the assessor to have used the "sale price" approach along with two "other factors" approaches, income and replacement cost. This conclusion is erroneous.

Though section 441.21 establishes the "sale price" approach as the primary valuation method, this statute does not prohibit the use of "other factors" along with sale price when data on the latter are limited. In *Equitable Life Insurance Co.* we said that

> [w]hen the other factors approach is used it is not necessary that sufficient sale[ ] price data be available upon which to determine [actual] value by use of that method alone. The other factors approach presupposes that the sale[ ] price data [are] insufficient to be relied upon as the sole basis for valuation. Only then is the other factors approach to be used. [If, however,] even one comparable sale exists, it should be considered in using the other factors approach.

281 N.W.2d at 825. This interpretation of section 441.21 emphasizes the primary nature of the sale price approach by requiring its use whenever possible. Clearly, then, the assessor's use of a three-method correlation that includes sale price is consistent with the statute, so long as the correlation is based on accurate and sufficient data. The district court erred by concluding otherwise.

### IV. *Disposition.*

Because the district court has only the statutory power to either approve or modify a valuation in a tax assessment appeal, it erred here by remanding this case to the city assessor. Despite this error, we could have made a value determination in our de novo review if the record had been sufficient. Here, however, the record is not adequate for a reliable valuation. Accordingly, we reverse and remand this case to the district court for proceedings consistent with this opinion. After the district court receives additional evidence and fixes a value for 1985, the parties may appeal from that determination as provided by law.

REVERSED AND REMANDED WITH DIRECTIONS.